821 F.2d 216
 NIAGARA FIRE INSURANCE COMPANY
v.
PEPICELLI, PEPICELLI, WATTS AND YOUNGS, P.C. and Perma Tread
Corporation, Russell Klasen, and Victor Leap,
Theodore H. Watts, Alan L. Pepicelli,
Lisa Pepicelli and Christopher
J. Youngs.
Appeal of PEPICELLI, PEPICELLI, WATTS AND YOUNGS, PC,
Defendant, and Theodore H. Watts, Alan L.
Pepicelli, Lisa Pepicelli Youngs and
Christopher J. Youngs,
Intervening Defendants.
 No. 86-3642.
 United States Court of Appeals,
Third Circuit.
 Argued April 29, 1987.
Decided June 25, 1987.
 
 Martin W. Sheerer (argued), Thomas J. Schuchert, Thomas J. Schuchert & Associates, Pittsburgh, Pa., for appellants.
 Robert C. Ward (argued), Dunn & Conner, Erie, Pa., for appellee.
 Before WEIS and STAPLETON, Circuit Judges, and SAROKIN, District Judge.*
 OPINION OF THE COURT
 STAPLETON, Circuit Judge.
 
 
 1
 In this dispute concerning malpractice insurance coverage, Pepicelli, Pepicelli, Watts & Youngs, P.C., ("the Law Firm") appeals from a grant of summary judgment to Niagara Fire Insurance Company ("Niagara").[1] The district court found no coverage under the Law Firm's malpractice policy for claims alleging negligence and breach of contract in the Law Firm's representation of Perma Tread Corporation ("Perma Tread"). Because we find that the claims made by Perma Tread do not constitute claims omitted from coverage under the malpractice policy's exclusions, we will reverse and remand with a direction that judgment be entered for the Law Firm.
 
 I.
 
 2
 John Pepicelli ("Pepicelli") owns all the shares of World of Tires, Inc. ("World of Tires"). In addition, Pepicelli practices law and is the major shareholder in the Law Firm, a professional corporation. Victor Leap and Russell Klasen are the sole shareholders of Perma Tread.
 
 
 3
 From June to October, 1980, Perma Tread owned a tire recapping plant. On October 16, 1980, World of Tires entered into a purchase agreement with Perma Tread. World of Tires agreed to buy the tire recapping plant for $350,000, consisting of a $10,000 cash down payment, $140,000 to be paid from the immediate sale of various plant assets, and a $200,000 World of Tires' note secured by the plant's remaining equipment. The final closing date of the deal was April 1, 1981.
 
 
 4
 Pursuant to the terms of the purchase agreement, World of Tires obtained fire and hazard insurance from the American Insurance Corporation ("American"). World of Tires was a named insured under the policy. Although both parties here refer to Perma Tread as a loss payee under the policy, the record is unclear as to whether Perma Tread was a loss payee or simply an additional named insured. See, e.g., III App. at 369, 378, 388. The policy limit was $250,000.
 
 
 5
 On December 26, 1980, a fire destroyed almost all the assets being purchased by World of Tires, leaving only salvage of a nominal value. At the time of the fire, World of Tires still owed Perma Tread approximately $260,000 according to the purchase agreement.
 
 
 6
 After the fire, Victor Leap and Russell Klasen of Perma Tread hired the Law Firm to collect compensation for the loss from American. A hand-written note, dated March 28, 1981, from Pepicelli to Leap and Klasen states that the agreed-upon fee for the Law Firm's services to Perma Tread was $5000. While this note implies World of Tires might play some role in collecting the fire insurance claim, it points out that Perma Tread would receive all the insurance proceeds. On February 18 and again on April 14, 1981, Pepicelli submitted documents to American that indicated a loss of $312,601. American thereafter offered to settle the fire claim for $112,136. Pepicelli termed the offer "ridiculous." III App. at 224.
 
 
 7
 Stephen Toole, another attorney in the Law Firm, then filed suit against American, naming World of Tires as the plaintiff. In its answer, American raised the defense of fraud, alleging that World of Tires had prepared a fraudulent proof of loss. Perma Tread, by this time represented by counsel from outside the Law Firm, intervened as a plaintiff in the fire insurance action prior to trial. The trial court, however, issued a directed verdict against Perma Tread because by the time it intervened, its claim was barred under the one-year contractual limitation on actions under the fire insurance policy. Trial before a jury resulted in a verdict against World of Tires and for the insurance company. As the trial judge stated, "This verdict could only have been based upon the belief that the defendant had established its affirmative defense of fraud or false swearing." III App. at 370.
 
 
 8
 Perma Tread and its shareholders, Leap and Klasen then initiated a malpractice action against the Law Firm. The malpractice litigation is being held in abeyance until this declaratory judgment suit determines whether Niagara must defend and indemnify the Law Firm under its malpractice policy. Perma Tread alleges in its complaint that Pepicelli and the Law Firm committed malpractice by inter alia failing to name Perma Tread as a plaintiff in the fire insurance suit, submitting erroneous proof of the fire loss, and failing to advise Perma Tread in a timely fashion that fraud had been raised as a defense by the fire insurance carrier.
 
 
 9
 The lawyers' liability insurance policy at issue here provides:
 
 I. Coverage
 
 10
 To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of any claim or claims, first made against the insured and reported to the Company during the policy period, arising out of personal injury or any act or omission of the insured in rendering or failing to render professional services for others in the insured's capacity as a lawyer or Notary Public and title insurance agents services in the insured's capacity as lawyer, and caused by the insured or any other person for whose acts or omissions the insured is legally responsible, except as excluded or limited by the terms, conditions and exclusions of this policy.
 
 II. Defense and Settlement
 
 11
 With respect to such insurance as is afforded by this policy, the Company shall defend any suit against the insured alleging such act or omission and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; and the Company may make such investigation and, with written consent of the insured, such settlement of any claim as it deems expedient....
 
 
 12
 * * *
 
 EXCLUSIONS
 This policy does not apply:
 
 13
 * * *
 
 
 14
 f) to any claim arising out of any insured's activities as an officer or director of any employee trust, charitable organization, corporation, company or business other than that of the Named Insured;
 
 
 15
 g) to any claim made by or against or in connection with any business enterprise (including the ownership, maintenance or care of any property in connection therewith), not named in the Declarations, which is owned by any insured or in which any insured is a partner, or employee or which is directly or indirectly controlled, operated or managed by any insured in a non-fiduciary capacity;
 
 
 16
 ....
 
 
 17
 III App. at 1-2. The policy's claim limit is $1,000,000.
 
 
 18
 Niagara retained Underwriters Adjusting Company and its claims counsel, Barie Snider, to supervise the Law Firm's defense in the malpractice litigation. Snider retained James Marnan of Knox, Graham, McLaughlin, Gornall & Sennett to act as defense counsel. Snider directed Marnan to forward to him all documents that Marnan received from the Law Firm's file on the fire insurance case and Marnan complied with the directive.
 
 
 19
 On November 1, 1984, Snider wrote Pepicelli to inform him of certain policy exclusions' possible applicability. Snider stated:
 
 
 20
 To the extent that the above captioned claim arises out of your activities as an officer or director of a "corporation, company or business other than that of the named insured", or to the extent that this claim is made "by or against or in connection with any business enterprise not named in the declarations, which is owned by any insured ...", Niagara Fire Insurance disclaims any liability to indemnify Pepicelli, Pepicelli, Watts and Youngs or the above named claimant in this matter. In that regard, we have retained [Robert Ward of Dunn & Conner] to represent Niagara Fire Insurance Company in regards to this coverage issue. We urgently recommend that you obtain counsel of your own choosing and at your own expense to represent you regarding this coverage issue.... In view of the fact that the issue of coverage has not as yet been resolved, we are instructing Knox, Graham, McLaughlin, Gornall and Sennett, Inc. to continue their defense of Pepicelli, Pepicelli, Watts and Youngs, P.C. under a reservation of rights.
 
 
 21
 IL App. at 150-51. During February of 1985, Snider and Marnan agreed to reject a settlement offer of $250,000 made by Perma Tread.
 
 
 22
 On March 8, 1985, Niagara filed its complaint in this declaratory judgment action. Niagara and the Law Firm each subsequently moved for summary judgment below. Niagara argued that the policy's exclusions here relieve the insurer of its obligation to defend and indemnify the insured, whereas the Law Firm argued that the exclusions are at least ambiguous with respect to the claims made by Perma Tread and therefore should be interpreted in favor of the insured. In addition, the Law Firm argued that Niagara should be estopped from relying on the exclusions because the insurer improperly obtained documents from the Law Firm's files, on the basis of those documents identified a coverage dispute, and, despite the coverage dispute, supervised both the malpractice action and the coverage suit through the same office of Underwriters Adjusting Company. The district court granted Niagara's summary judgment motion and denied the Law Firm's, reasoning that one or more policy exclusion(s) apply to each of Perma Tread's malpractice claims. The district court rejected the Law Firm's estoppel argument because the firm had not relied to its detriment on any representations by Niagara. The Law Firm filed a timely notice of appeal.
 
 II.
 
 23
 In reviewing summary judgment, "an appellate court must apply the same test that the district court should have utilized initially, and must determine whether 'no genuine issue as to a material fact remains for trial, and that the moving party is entitled to judgment as a matter of law.' " Koshatka v. Philadelphia Newspapers, Inc., 762 F.2d 329, 333 (3d Cir.1985) (quoting Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977)). The material facts of this controversy are undisputed. Determination of the proper coverage of an insurance contract when the underlying facts are not in dispute is a question of law. Pacific Indemnity Co. v. Linn, 766 F.2d 754, 760 (3d Cir.1985). We therefore undertake plenary review to determine whether the malpractice policy covers the factual situation presented by Perma Tread's suit against the Law Firm.
 
 
 24
 Pennsylvania law governs our interpretation of this insurance policy's coverage. See, e.g., Northbrook Insurance Co. v. Kuljian Corp., 690 F.2d 368, 371 (3d Cir.1982). The Supreme Court of Pennsylvania has articulated the state's "well settled" principles of insurance contract interpretation as follows:
 
 
 25
 The goal of [the] task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. See Mohn v. American Casualty Co. of Reading, 458 Pa. 576, 326 A.2d 346 (1974). Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. See Mohn v. American Casualty Co. of Reading, supra. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. See Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co., 426 Pa. 453, 233 A.2d 548 (1967).
 
 
 26
 Standard Venetian Blind Co. v. American Empire Insurance Co., 503 Pa. 300, 469 A.2d 563, 566 (Pa.1983). This court, applying Pennsylvania law, has explained:
 
 
 27
 "A court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." St. Paul Fire & Marine Insurance Co. v. United States Fire Insurance Co., 655 F.2d 521, 524 (3d Cir.1981); see also Urian v. Scranton Life Insurance Co., 310 Pa. 144, 150-51, 165 A. 21, 22-23 (1933). "A provision of an insurance policy is ambiguous if reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning." Celley v. Mutual Benefit Health & Accident Association, 229 Pa.Super. at 481-82, 324 A.2d at 434.
 
 
 28
 Northbrook Insurance Co. v. Kuljian Corp., 690 F.2d at 372.
 
 
 29
 We find that the Law Firm's malpractice policy unambiguously covers the claims made by Perma Tread. First, Perma Tread's negligence and breach of contract allegations concern the failure of the Law Firm to render competent professional services while collecting fire insurance proceeds for Perma Tread. Thus, they constitute "claim[s] arising out of ... any act or omission of the insured in rendering or failing to render professional services for others in the insured's capacity as a lawyer." Accordingly, the "Coverage" and "Defense and Settlement" provisions of the malpractice policy, quoted above, clearly apply to Perma Tread's claims. Because the first two sections of the policy apply to Perma Tread's malpractice suit, Niagara can escape its obligation to defend and indemnify only if one of the policy's exclusions applies to Perma Tread's suit.
 
 
 30
 Second, neither of the exclusions that Niagara relies upon to disavow coverage applies to the malpractice claims at hand. Niagara points to exclusions "f" and "g." The insurer emphasizes two facts to support its argument of exclusion: 1) Pepicelli was and is "an officer or director" of World of Tires, and 2) the Law Firm, in its actions to collect the fire insurance claim, represented two clients--World of Tires and Perma Tread. These facts, however, do not bring Perma Tread's malpractice claims within either exclusion "f" or exclusion "g." Just as the district court did in reaching its decision, Niagara ignores the crucial distinction here: The exclusions speak of excluded claims, and thus the character of the specific legal claims, rather than the malpractice suit's general factual background, must be analyzed to determine the exclusion issue. The claims made by Perma Tread deal only with negligence and breach of contract in the Law Firm's representation of Perma Tread, and resolution of the claims will affect only the interests of Perma Tread and the Law Firm. Neither the actions nor the interests of Pepicelli in his business venture, World of Tires, are at issue in the malpractice suit. Therefore, the malpractice claims are not omitted from coverage by the two exclusions, "f" and "g," designed to exclude business risk and collusive suits from coverage under the policy.
 
 
 31
 Perma Tread's malpractice claims do not "aris[e] out of any insured's activities as an officer or director of any ... corporation ... other than that of the Named Insured." As Niagara explains in its brief, an attorney may simultaneously act as a lawyer and as an officer or a director of a business, and exclusion "f" is designed to prevent coverage for a claim based upon such actions. The attorney can obtain additional "officers and directors" coverage to provide protection in that situation. Niagara, however, glosses over the fact that it cannot find any such actions in the allegations of Perma Tread's claims. Although Pepicelli is an officer and director of World of Tires, Perma Tread's malpractice suit is based solely on Pepicelli's and the Law Firm's legal representation. The allegedly negligent legal representation did not simultaneously involve business decisions by Pepicelli.
 
 
 32
 In addition, Perma Tread's claims are not "made by or against or in connection with any business enterprise ... not named in the Declarations ... which is directly or indirectly controlled, operated or managed by any insured in a non-fiduciary capacity." Obviously the malpractice claims are not made by or against World of Tires. Neither are they "in connection with" Pepicelli's business as that phrase is used in exclusion "g."
 
 
 33
 We must read "in connection with" in the context of the exclusion and the entire policy. See Northbrook Insurance Co. v. Kuljian Corp., supra. The parties agree that the purpose of exclusion "g" in this malpractice policy is to prevent collusive suits whereby malpractice coverage could be used to shift a lawyer's business loss onto his or her malpractice carrier. The malpractice claims of Perma Tread are made in connection with its business, not in connection with the business of World of Tires, and World of Tires is not connected to Perma Tread's malpractice suit in such a way that it will benefit from a malpractice award to Perma Tread. The only connection World of Tires has to that suit is as a player in the factual background. We do not believe that reasonable, disinterested persons, on considering exclusion "g" in the context of the whole policy, would differ as to its meaning;[2] we believe they would agree that the policy does not exclude Perma Tread's claims. If one were to read "in connection with" to include Perma Tread's claims within the exclusion, the phrase would have no discernible limit. Under such an all-inclusive reading, many other non-collusive scenarios would result in the exclusion of malpractice claims from coverage, contrary to the purpose of the policy and the exclusion.
 
 
 34
 Not only does World of Tires have no interest in the outcome of the malpractice suit, it also did not stand to gain by a collection of the fire insurance proceeds. The record shows that World of Tires was merely a nominal party in the fire insurance litigation. Perma Tread was the real party in interest. Whether as a loss payee under the fire and hazard policy or because of the purchase agreement, Perma Tread would have received any payment made by American.
 
 
 35
 The claims made by Perma Tread can easily be distinguished from the hypotheticals of collusive suits that Niagara posits in its brief. These hypotheticals all involve potential malpractice claims by a business in which the lawyer has an interest. Neither Pepicelli nor any other lawyer in the Law Firm owns any interest in Perma Tread. Leap and Klasen own all the corporation's shares.
 
 
 36
 We conclude that the coverage of the policy unambiguously includes Perma Tread's malpractice claims against the Law Firm. As we have noted, however, even if we perceived some ambiguity in the exclusion clauses, we could not allow the judgment below to stand. Ambiguous language, under Pennsylvania law, is to be construed against the insurer. See Standard Venetian Blind Co. v. American Empire Insurance Co., supra. Accordingly, we decline to read clauses "f" and "g" to exclude the claims made by Perma Tread from the policy's coverage.III.
 
 
 37
 Because we find coverage under the express language of the malpractice policy, the court need not reach the Law Firm's estoppel argument. We will reverse and remand with instructions to enter summary judgment for the Law Firm.
 
 
 
 *
 Honorable H. Lee Sarokin, United States District Judge for the District of New Jersey (Newark), sitting by designation
 
 
 [1]
 The individual members of the Law Firm are defendants-appellants as well. For brevity's sake, we will refer only to the firm when speaking of all the appellants in this opinion
 
 
 [2]
 The district court evaded the exclusion's clear meaning by interpreting "in connection with" as meaning "traceable to." Because the chain of occurrences leading up to the fire insurance claim and to the malpractice claim involved World of Tires, the court found that exclusion "g" applied to the malpractice claim. The lower court in essence re-wrote the policy to reach its conclusion of no coverage