USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 97-1306 MT. AIRY INSURANCE COMPANY, Plaintiff - Appellee, v. STEPHEN A. GREENBAUM, ET AL., Defendants - Appellants. ____________________ RICHARD T. OSHANA, JONAH JACOB Defendants - Appellees. ____________________ No. 97-1307 MT. AIRY INSURANCE COMPANY, Plaintiff - Appellee, v. STEPHEN A. GREENBAUM, ET AL., Defendants - Appellees. ____________________ JONAH JACOB Defendant - Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Richard G. Stearns, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Hill,* Senior Circuit Judge, ____________________ and Pollak,** Senior District Judge. _____________________ _____________________ Gary D. Buseck, with whom McDonough, Hacking & Neumeier was ______________ ______________________________ on brief for appellant Stephen A. Greenbaum. Robert J. Mailloux, Jr., with whom E. Peter Mullane and _________________________ _________________ Mullane, Michel & McInnes were on brief for appellant Jonah ___________________________ Jacob. Jeffrey A. Goldwater, with whom Matthew J. Fink, Michelle M. ____________________ _______________ ___________ Bracke, Bollinger, Ruberry & Garvey, Carol A. Griffin, Scott ______ ____________________________ _________________ _____ Douglas Burke and Morrison, Mahoney & Miller were on brief for _____________ ___________________________ appellee Mt. Airy Insurance Company. ____________________ September 29, 1997 ____________________  ____________________ * Of the Eleventh Circuit, sitting by designation. ** Of the Eastern District of Pennsylvania, sitting by designation. -2- HILL, Senior Circuit Judge. Mt. Airy Insurance Company HILL, Senior Circuit Judge. ____________________ sought a declaratory judgment that it does not have a duty to defend the named defendants in an underlying malpractice action against them. The district court granted summary judgment to Mt. Airy Insurance Company. This appeal ensued.1 I. Jonah Jacob filed a malpractice action against eight attorneys, including Stephen A. Greenbaum, Richard Oshana, Ira A. Nagel, Howard S. Fisher, and Gerald A. Hamelburg (the Law Firm).2 The factual allegations of Jacob's complaint as summarized by the district court are as follows. In 1984, Jacob, Greenbaum, Oshana, and Richard Gold (not a party) formed a partnership styled as South Copley Limited Partnership (South Copley). South Copley was created to acquire, develop and manage residential real estate. Jacob was a passive investor who entrusted Greenbaum, Oshana and the Law Firm with management and oversight of these investment business affairs.  Over the next five years the partnership created four trusts and two partnerships to hold title to various projects: the Horace Street Trust, the Trenton Street Trust, the Westbridge  ____________________ 1 We find no merit in defendants' suggestion, raised for the first time in their Reply Brief, that we have no jurisdiction to hear this appeal because the district court made no findings justifying its exercise of its discretionary declaratory judgment authority. An insurance company's claim that it has no duty to defend in another action is the archetypal case for which a declaratory judgment is appropriate. 2 Other defendants are named in the malpractice action, but are not parties to this appeal. -3- Trust, the Queensbury Realty Trust, Northeast Glen Limited and Westwood Limited. Also, in 1986, Northeast Realty Investment Group was incorporated to manage the partnership's real estate holdings. Jacob's complaint describes these collectively as the "Business Entities."  All of the Business Entities were operated out of the offices of the Law Firm and were allegedly funded either with seed money from Jacob, or with real estate equity and loans which Jacob, Gold, Oshana and/or Greenbaum co-made and/or co- guaranteed. The Business Entities either owned real estate projects outright or they were used to channel borrowed monies for the acquisition and operation of the real estate projects. At or about the time that South Copley was formed, Greenbaum, Oshana and Gold incorporated two close corporations, South Copley Development Corporation and South Copley Management Corporation, naming themselves as the sole officers, directors and shareholders. According to the complaint, Greenbaum, Oshana and Gold used these two corporations, together with Northeast Realty Investment Group, as "Related Cash Conduits" "to improperly funnel fiduciary monies (belonging to the Business Entities or to Jacob) to each named defendant, either directly for no reason or disguised in the form of income and/or reimbursement of expenses." On August 13, 1986, Jacob, Gold and Oshana executed a "Mortgage Investors Line of Credit and Collateral Pool Agreement" (Collateral Pool Agreement) under which the Mortgage Investors -4- Corporation (MIC) agreed to extend a five year, $5,000,000 line of credit secured by the assets of the Business Entities and a promissory note given by South Copley Limited Partnership. The term "Collateral Pool" was used because Jacob agreed to sign a number of anticipatory notes, mortgages, guaranties and other related security instruments or documents. Over the next five years, MIC advanced various sums pursuant to the Collateral Pool Agreement. The complaint alleges that "[t]he management of virtually all of [Jacob's] business affairs with MIC was, at all times and in all matters material hereto, in the hands of (and entrusted to) Richard T. Oshana and Richard Gold, his co-borrowers, co-partner(s), co-beneficiary(s), co-shareholder(s) and/or trustee(s) in the real estate and business matters related to the MIC Loan Documents. At all times material hereto, Defendants Oshana and Greenbaum (as attorneys working frequently hand-in-glove) and the Law Firm each represented Plaintiff's interests in and related to the MIC Loans and the Collateral Pool Agreement, in and related to the various Business Entities. . . ."  While managing the Business Entities, Jacob alleges that Greenbaum and Oshana misappropriated funds in the form of loans, unexplained disbursements and management fees. Jacob also alleges that Greenbaum and Oshana abused Jacob's trust by taking advantage of their position as principals of these Business Entities and as his attorney by concealing the aforementioned conduct and failing to advise Jacob of these breaches of trust. -5- All of the alleged misappropriation occurred through Business Entities in which Greenbaum and Oshana were officers, directors, or partners. Jacob also alleges that Oshana and Gold were forging his signature to obtain monies from another joint business venture, and that Greenbaum knew it. He asserts that Greenbaum, Oshana and Gold treated the assets of these various business ventures as their own in complete disregard of the rights, duties and obligations each owed Jacob. Jacob also alleges that Greenbaum and Oshana's conduct constitutes legal malpractice in that they stole fiduciary funds from him and concealed the misappropriation; failed to account for fiduciary funds, or to segregate Jacob's portion of the funds from the Business Entities' funds; failed to protect or promote Jacob's interest in the Business Entities, acting instead in their own self-interest by misappropriating funds and concealing the wrongdoing.3 Mt. Airy Insurance Company (Mt. Airy) insures the Law Firm against malpractice claims and initially agreed to defend, under a reservation of rights. Upon learning facts demonstrating that Jacob's claim is not covered by its policy, Mt. Airy filed this declaratory judgment action. Mt. Airy continued to provide  ____________________ 3 Jacob's ten-count complaint asserts claims of legal malpractice, law partnership liability by estoppel, fraud, negligent misrepresentation, breach of fiduciary duty, conversion, monies had and received, unfair and deceptive trade practices, and equitable relief in the form of an accounting, imposition of a receivership, a permanent injunction, and reach and apply. -6- a defense to the Law Firm until the district court ruled that Exclusion G of its policy with the Law Firm precludes coverage for Jacob's claims against it and that Mt. Airy has no duty to defend. II. A liability insurer in Massachusetts has a duty to defend its insured "if the allegations in the third-party complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms. . . ." Sterilite Corp. v. Continental Cas. Co., 17 Mass. App. Ct. _______________ _____________________ 316, 318, 458 N.E.2d 338 (Mass. App. Ct. 1983). This is true even if the claim is baseless, as "it is the claim which determines the insurer's duty to defend." Id. at 324 n.17 ___ (quoting Lee v. Aetna Cas. & Surety Co., 178 F.2d 750, 751 (2d ___ ________________________ Cir. 1949)). Furthermore, under Massachusetts law, if an insurer has a duty to defend one count of a complaint, it must defend them all. Aetna Cas. & Surety Co. v. Continental Cas. Co., 413 ________________________ ____________________ Mass. 730, 732 n.1 (1992). There is, on the other hand, no duty to defend a claim that is specifically excluded from coverage. While the insured bears the initial burden of proving that a claim falls within the grant of coverage, Camp Dresser & McKee, Inc. v. Home Ins. Co., ___________________________ _____________ 30 Mass. App. Ct. 318, 321, 568 N.E.2d 631 (Mass. App. Ct. 1991), the insurer "bears the burden of demonstrating that the exclusion applies." Great Southwest Fire Ins. Co. v. Hercules Building & ______________________________ ___________________ Wrecking Co. Inc., 35 Mass. App. Ct. 298, 302, 619 N.E.2d 353 __________________ -7- (Mass. App. Ct. 1993). "Exclusions from coverage are to be strictly construed. . . . Any ambiguity in the somewhat complicated exclusions must be construed against the insurer." Sterilite, 17 Mass. App. Ct. at 321 n.10. An ambiguity is said _________ to "exist[ ] in an insurance contract when the language contained therein is susceptible of more than one meaning." Jefferson Ins. ______________ Co. v. Holyoke, 23 Mass. App. Ct. 472, 474, 503 N.E.2d 474 ___ _______ (Mass. App. Ct. 1987) (citations omitted). "[W]here the language permits more than one rational interpretation, that most favorable to the insured is to be taken." Boston Symphony ________________ Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 12, _______________ __________________________ 545 N.E.2d 1156 (Mass. 1989) (quoting Palmer v. Pawtucket Mut. ______ _______________ Ins. Co., 352 Mass. 304, 306, 225 N.E.2d 331 (Mass. 1967)).  ________ III. Under the Mt. Airy policy with the Law Firm, coverage is provided for claims arising out of professional services rendered by an "Insured." The policy defines "Insured" to include "any lawyer . . . who was or is a partner, officer, director, or employee of the [Law Firm], but only as respects professional services rendered on behalf of the Named Insured . . . ." There is no dispute that a defense is owed under the policy unless some exclusion applies.4  ____________________ 4 Indemnification, of course, is another issue. Exclusion A of the policy disclaims any responsibility to pay "any claim that results in final adjudication against any Insured that the Insured has committed any criminal, dishonest, fraudulent or malicious act, errors, omissions or personal injuries." -8- The policy contains an Exclusion G which precludes coverage for: any claim arising out of or in connection with the conduct of a business enterprise other than the Named Insured (including the ownership, maintenance or care of any property in connection therewith) which is owned by any Insured or in which any Insured is a partner, or which is directly or indirectly controlled, operated or managed by any Insured either individually or in a fiduciary capacity; Mt. Airy argues that, because Jacob's claims involve losses connected with independent businesses owned, controlled, or managed by the Insureds, the claims are excluded. The defendants, joined by Jacob, argue that, because at least some claims in the Jacob complaint allege breach of fiduciary duty, Mt. Airy has an unqualified duty to defend. The defendants also contest that Exclusion G applies to exclude all claims raised by Jacob's complaint.  The district court held, as a matter of law, that all of Jacob's claims come within Exclusion G. We review this judgment de novo. Alan Corp. v. Int. Surplus Lines Ins. Co., 22 _______ __________ ___________________________ F.3d 339, 341-42 (1st Cir. 1994). IV. Exclusion G applies to any of Jacob's claims which arise out of, or are in connection with, the conduct of any business which is owned in whole or in part by any Insured or which any Insured controls, operates or manages. Defendants argue that Exclusion G is inapplicable because Jacob's claims arise out of an alleged breach of their fiduciary duty to Jacob -9- as his lawyers rather than out of their roles as partners, officers, directors, shareholders or trustees of their joint business ventures as his partners, officers, directors, shareholders or trustees of the joint business ventures.  Defendants' argument that the duty to defend is triggered by allegations of legal malpractice misses the mark. Exclusion G does not even come into play unless the allegations charge legal malpractice, because coverage under the policy is limited to malpractice. "There will always be an attorney-client relationship when these exclusions are at issue. Absent an attorney-client relationship, the insuring agreement does not apply and the language of the specific exclusions does not come into play. [Defendants'] contention would create an illogical result; the policy exclusions would be rendered entirely meaningless and of no effect." Senger v. Minnesota Lawyers Mut. ______ ______________________ Ins. Co., 415 N.W.2d 364, 368 (Minn. App. 1987). See also _________ ________ Potomac Ins. Co. v. McIntosh, 804 P.2d 759, 762 (Ariz. App. _________________ ________ 1990). Defendants also argue that the Exclusion's requirement that the claim "arise out of or in connection with" the conduct of a controlled business enterprise should be interpreted to mean that the only acts excluded are those which are the proximate cause of the alleged loss. If attorney negligence, rather than the conduct of the business, is the proximate cause of the loss, they argue, the exclusion is inapplicable.  -10- The argument ignores the plain language of Exclusion G which excludes coverage for any claim arising out of or in ___ connection with the conduct of a business entity in which an Insured has an interest. The cases cited by defendants are not to the contrary. See Clauder v. Home Ins. Co., 790 F. Supp. 162 ___ ________________________ (S.D. Ohio 1992); Morris v. Valley Forge Ins. Co., 805 S.W.2d 948 ______ _____________________ (Ark. 1991); and Niagara Fire Ins. Co. v. Pepicelli, 821 F.2d 216 _____________________ _________ (3d Cir. 1987). In Clauder, the policy exclusion required that _______ the claim arise out of work performed for a business entity in which the lawyer had a pecuniary or beneficiary interest, an exclusion that is narrower that Exclusion G. The lawyer was accused of selling an estate asset to a company in which he had an interest without disclosing that fact to his client. 790 F. Supp. at 164-65. The Morris court held that application of a ______ similar exclusion depended on whether the attorney represented his own company, the client, or both. 805 S.W.2d at 952. Here, Jacob's complaint alleges that Greenbaum and Oshana were, at best, representing both their companies and Jacob, and, at worst, representing their companies to Jacob's detriment. In Pepicelli, _________ the attorney's interest in another business was not at issue; the plaintiff rather alleged negligence on the part of his law firm in its handling of the plaintiff's insurance claim. 821 F.2d at 220-21. Furthermore, the law of Massachusetts is contrary to defendants' position. See New England Mut. Life Ins. Co. v. _________________________________ Liberty Mut. Ins. Co., 40 Mass. App. Ct. 722, 726, 667 N.E.2d 295 _____________________ -11- (Mass. App. Ct. 1966) (the term "arising out of" is much broader than the term "caused by," particularly in the context of an exclusionary clause in an insurance policy). See also Murdock v. ________ _______ Dinsmoor, 892 F.2d 7, 8 (1st Cir. 1989) ("arising out of" ________ ordinarily held to mean "originating from," "growing out of," "flowing from," "incident to," or "having connection with"). Exclusion G extends to include all claims in connection with the conduct of an Insured's business entities. In summary, Exclusion G precludes coverage for any ___ claim which arises out of or in connection with a business venture controlled, operated or managed by any Insured or in ___ which the Insured has an interest as an owner or a partner. This includes all claims sounding in malpractice if the allegations charge wrongdoing in connection with a business in which the Insured has such an interest. We must determine, then, whether an insured attorney played a role as an officer, shareholder, director, trustee or partner in every Business Entity about which Jacob complains. The district court found the undisputed facts to be that either Greenbaum or Oshana did play such a role. Greenbaum and Oshana were partners in South Copley, shareholders and officers of South Copley Development Corporation, and shareholders and officers of South Copley Management Corporation. Oshana was a shareholder and officer of Northeast Realty Investment Group, while Greenbaum was a director. Oshana was a beneficiary of Horace Street Trust; a -12- trustee and beneficiary of Trenton Street Trust; a trustee and beneficiary of the Westbridge Trust; a trustee and beneficiary of Queensbury Realty Trust; a partner in Northeast Glen Limited; and a partner in Westwood Limited. Greenbaum served as a trustee and beneficiary of Horace Street Trust; and as a partner in Northeast Glen Limited.  The parties do not dispute that Greenbaum qualifies as an "Insured" under the policy at all relevant times. There is a dispute, however, as to Oshana's status after May 8, 1988. Greenbaum attests that Oshana was terminated from the Law Firm on that date. Oshana disputes this fact.  If Oshana was not an Insured after May of 1988, he has, of course, no coverage at all under the policy for his acts after that date. The Law Firm argues, however, that its coverage would be revived for malpractice claims arising after May 1988 and in connection with business entities to which Oshana is their only link. A dispute on a fact necessary to the resolution of a motion for summary judgment precludes its entry. We hold, however, that the district court correctly reasoned that under the undisputed facts of this case, Oshana's status after May of 1988 is irrelevant to the issue of coverage.  The facts are that either Greenbaum or Oshana played a role or had an interest in each and every business venture about which Jacob complains. In each case these interests began prior _____ to May 1988 and continued uninterrupted until Jacob uncovered the -13- scheme. Jacob's claims all arise in connection with these business schemes, all of which began prior to Oshana's leaving the firm, whenever that was.  The issue, in fact, is not whether Greenbaum or Oshana had an interest in each Business Entity for the entire period alleged in the complaint. The relevant inquiry is whether the claim arises out of the conduct of a Business Entity to which Greenbaum or Oshana had the requisite relationship at the time the conduct began.  For example, although an alleged misappropriation from the 11 Horace Street Trust may have occurred after May 1988, the scheme began as early as May 1985, and continued uninterrupted until Jacob discovered it in 1990. Greenbaum was a director and Oshana a beneficiary of the trust at its inception.5 Similarly, the defendants attempt to separate the forged notes executed to obtain Collateral Pool funds, arguing that claims related to these notes are covered because Oshana was no longer an Insured at the time. It was in 1986, however, that the alleged misappropriation and forgery first began. The fact that Oshana's alleged misconduct continued uninterrupted until Jacob discovered it does not negate the applicability of the Exclusion. The claim still arises out of the conduct of a business enterprise in which an Insured was a partner at the time the conduct began.   ____________________ 5 In fact, it is undisputed that Greenbaum was a Trustee and Beneficiary of the Trust from its formation in 1985 through 1990. -14- Jacob's complaint alleges an integrated ongoing scheme of deception and misappropriation that began while Oshana was still an Insured. If, out of hundred of individual transactions, some might not fall under Exclusion G if they occurred independently, that fact is irrelevant. An additional act of wrongdoing at the tail end of the scheme does not create coverage for conduct which began at a time when the Insureds had the requisite relationship with the Business Entities. V.  Jacob's claims only allege wrongdoing by Insureds in connection with businesses in which they had an interest. Exclusion G of the Mt. Airy policy excludes coverage for such claims. Mt. Airy, therefore, has no duty to defend appellants. The judgment of the district court is affirmed.  ________ -15-