**COREGIS INSURANCE COMPANY,**
Plaintiff,

v.

**F. Craig LAROCCA, et al., Defendants.**

**No. CIV. A. 98–2664.**

United States District Court,
E.D. Pennsylvania.

Dec. 7, 1999.

Jeffrey A. Goldwater, Matthew J. Fink, Brian C. Bendig, Bollinger, Ruberry and Garvey, Chicago, IL, Steven J. Polansky, Spector, Gadon & Rosen, P.C., Moorestwon, NJ, for Plaintiff.

Frederic L. Shenkman, Goldenberg, Mackler, Sayegh & Mintz, NJ, Michael A. Gill, Law Offices of Goldenberg, Mackler, Sayegh and Mintz, Northfield, NJ, for Defendant.

**MEMORANDUM**

LOWELL A. REED, Jr., Senior District Judge.

Now before this Court are the cross-motions of plaintiff Coregis Insurance

Company (Document No. 18) and defendant F. Craig LaRocca (Document No. 19) for summary judgment.[1] Upon consideration of the motions, memoranda and responses, and the record pursuant to Rule 56 of the Federal Rules of Civil Procedure, the motion of plaintiff will be granted and the motion of defendant will be denied.

## I. BACKGROUND

Defendant F. Craig LaRocca ("LaRocca"), an attorney, has been sued in the Superior Court of New Jersey for his role in a botched real estate investment scheme. The complaints and counterclaims in those suits allege that LaRocca was negligent in his conduct as an attorney and as a partner and trustee in a realty business enterprise. LaRocca claims he is entitled to coverage for the legal malpractice claims in those suits under the professional liability insurance policy he holds with plaintiff Coregis Insurance Company ("Coregis"). Coregis brought this declaratory judgment action under 28 U.S.C. § 2201, seeking a determination of whether LaRocca is eligible for coverage. LaRocca counterclaimed, seeking declaration of coverage and alleging breach of contract and breach of the duties of good faith and fair dealing.

The facts of the case are largely undisputed. LaRocca was one of three trustees of the New Gretna Realty Trust, which was formed in March 1994 for the purpose of acquiring real estate to be developed and sold. The trust successfully acquired the property it sought and commenced construction of a real estate development called "Drewes Landing," which was to consist of residential lots upon which modular houses would be built and sold at a profit. In December 1994, for tax purposes, the trust was transformed into the New Gretna Realty, L.L.C.,[2] which continued the work of the trust. LaRocca was one of 16 partners in New Gretna Realty, and he held a 7.5 % interest in the company. (Motion of Defendant F. Craig LaRocca for Summary Judgment, Exhibit B, at 24) ("LaRocca Motion").

New Gretna contracted with a company called the Page Group, Inc., to construct homes on the lots. The Page Group was headed by Joseph Paggi. Paggi proceeded to encumber the Drewes Landing properties with millions of dollars in mortgages, apparently without authority.[3] Paggi committed suicide in August 1995.

The underlying suits in the Superior Court of New Jersey (the suits in which LaRocca is a defendant and for which LaRocca seeks coverage from Coregis) arose out of competing lien rights and other damages resulting from the financial irregularities that plagued the Drewes Landing project. Three suits have been filed in which LaRocca has been named as a defendant or third-party defendant: *Carnegie Bank, N.A. v. Page Group, Inc.*, No. 5036–96 (Sup.Ct. N.J. Ocean Cty.1996); *Serot v. Page Group*, No. 1153–96 (Sup.Ct. N.J. Ocean Cty.1996); *Pesce v. Page Group, Inc.*, No. 03252–96 (Sup.Ct. N.J. Burlington Cty.1996). In each case, LaRocca is alleged to have violated his duty as a trustee of New Gretna, and to have committed legal malpractice. It is for the latter claims that LaRocca seeks coverage.

The parties do not dispute that LaRocca is the named insured under the profession-

---

1. Defendant Pearlstine/Salkin Associates, P.C., were dismissed from the case by order of this Court (Document No. 29) on August 10, 1999, when Pearlstine/Salkin and Coregis reached a settlement agreement. Thus, to the extent that the papers filed in support of the defendant's motion *sub judice* discuss Pearlstine/Salkin as a party to the suit, they will be disregarded.

2. For the purpose of this motion, both the New Gretna Trust and the New Gretna Realty, L.L.C., will be referred to as "New Gretna."

3. Paggi was, at one point, a trustee of the New Gretna Trust, but was not a partner in the New Gretna Realty, L.L.C., and apparently had no ownership interest in or authority to encumber the Drewes Landing properties at the time he engaged in the conduct at issue.

al liability policy. However, Coregis argues that the claims against LaRocca are excluded under the terms of the policy. Coregis cites two exclusions contained in the "Pennsylvania Lawyers Professional Liability" form (COR.OOP.0430 (2/95)) appended to the policy issued to LaRocca:

The policy does not apply to: . . .

E. any CLAIM arising out of an IN-SURED'S activities as an officer, director, partner, manager or employee of any company, corporation, operation, organization or association other than the NAMED INSURED; . . .

G. any CLAIM arising out of or in connection with the conduct of any business enterprise other than the NAMED INSURED (including the ownership, maintenance or care of any property in connection therewith) which is owned by an INSURED or in which any INSURED is a partner, or which is directly or indirectly controlled, operated or managed by any INSURED either individually or in a fiduciary capacity; . . .

(Memorandum of Law in Support of Coregis Insurance Company's motion for Summary Judgment Against F. Craig LaRocca and Pearlstine/Salkin Associates, Exhibit B to Exhibit 1, Coregis Lawyers Professional Liability Insurance Policy, No. PL–319334–4, Policy Period Jan. 23, 1996 through Jan. 23, 1997 ("Coregis Policy") [emphasis in original] ).

LaRocca contends that the conduct at issue in the underlying claims arose solely out of the legal services that he provided to New Gretna, not out of his role as a trustee or partner of New Gretna, and therefore the exclusions do not apply.[4]

## II. ANALYSIS

Under Rule 56(c) of the Federal Rules of Civil Procedure, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," then a motion for summary judgment must be granted. The question before the Court at the summary judg-

---

**4.** LaRocca asserts that "two different policies have surfaced purporting to insure LaRocca from January 23, 1996 through January 23, 1997." (Responsive Memorandum of Law in Support of Defendant F. Craig LaRocca's Motion for Summary Judgment, at 2). In support of this assertion, LaRocca attaches two insurance policies, as Exhibits A and B, to his response. The two policies vary from one another in one significant respect: different forms were attached to the policies, one that contains the policy exclusions relied upon by Coregis and one that does not.

The mystery is easily solved. Both policies are identical in every way with the exception of one form. It is indisputable that the correct form, as reflected in the list of forms and endorsements in both policies, is the "Pennsylvania Lawyers Professional Liability" (COR.OOP.0430 (2/95)). The form appended to Policy A, "Lawyers Professional Liability Insurance Part Time Coverage" (COR.OOP.0449 (2/95–PA)) is not contained in either policy's list of forms and endorsements, and its identification number is not consistent with any document on that list. It is clear that someone mistakenly appended the wrong form to Policy A, and that the only explana-

tion for the presence of the part-time coverage form is human error.

LaRocca does not contend that he purchased part-time liability insurance (the form attached to Policy A), and as he apparently practiced law on a full-time basis throughout the relevant time period, such a policy would have been inappropriate for LaRocca and probably would not have provided any coverage to him. Furthermore, LaRocca has not brought forward any evidence of the origins of the two policies. He has not asserted that he was ever in possession of Policy A or that he relied on the language of Policy A, nor has he presented evidence that he was unaware of the exclusionary language contained in Policy B.

I conclude that there is no genuine issue of material fact as to whether the "Pennsylvania Lawyers Professional Liability" form (COR. OOP.0430 (2/95)) is in fact a part of the insurance policy held by LaRocca. I also conclude that a reasonable jury could not conclude that the "Lawyers Professional Liability Insurance Part–Time Coverage" form (COR.OOP.0449 (2/95–PA)) was a part of LaRocca's policy.

ment stage is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson v. Liberty Lobby,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court's role at summary judgment is not to weigh the evidence, but to determine whether there is a genuine issue for trial; that is, an issue upon which a reasonable jury could return a verdict in the nonmoving party's favor. *See id.* at 249, 106 S.Ct. at 2511.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

In deciding whether there is a disputed issue of material fact, the "'inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

The construction of the terms of the policy is governed by Pennsylvania law, as the policy was delivered in Pennsylvania. *See Travelers Indem. Co. v. Fantozzi,* 825 F.Supp. 80, 84 (E.D.Pa.1993). Under Pennsylvania law, interpretation of the terms of an insurance contract is a question of law to be decided by the Court, and

where there is no genuine issue of material fact, there is no need to submit the issue to a trier of fact. *See Pacific Indem. Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985).

In interpreting an insurance policy, unambiguous terms should be given their plain and ordinary meaning. *See St. Paul Fire & Marine Ins. Co. v. Lewis,* 935 F.2d 1428, 1431 (3d Cir.1991). A provision of a policy is ambiguous if "reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning," *Hamilton Bank v. Insurance Co. of North America,* 384 Pa.Super. 11, 16, 557 A.2d 747, 750 (1989) (quoting *Celley v. Mutual Benefit Health & Accident Ass'n,* 229 Pa.Super. 475, 481–83, 324 A.2d 430, 434 (1974)), and if more precise language could have eliminated the ambiguity. *See Fantozzi,* 825 F.Supp. at 84 (quotation omitted). Exclusions from coverage "will be effective against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitations or understood their import." *Linn,* 766 F.2d at 761 (internal citations omitted).

The policy at issue in this case covers claims "arising out of the conduct of the insured's profession as a lawyer ...," (Coregis Policy, at 1), and thus I conclude that the underlying legal malpractice suits, on their face, fall within the coverage of the Coregis policy. The question before me on Coregis' motion is whether the policy's exclusions apply to the underlying claims against LaRocca, and thus whether LaRocca is ineligible for coverage.

I conclude as a threshold matter that reasonable persons could not differ on the meaning of the two relevant exclusions in the policy, E and G, and that the language of the exclusions is clear and unambiguous. *See Coregis Ins. Co. v. Bartos,* 37 F.Supp.2d 391, 394 (E.D.Pa.1999) (concluding that identical policy exclusions were clear and unambiguous). Furthermore, I conclude that LaRocca was an "officer" and "partner" of a "company" or "business

enterprise," New Gretna, within the meaning of Exclusions E and G.[5]

### III. The *Pepicelli* Analysis

As both parties acknowledge, controlling case in this jurisdiction is *Niagara Fire Ins. Co. v. Pepicelli*, 821 F.2d 216 (3d Cir.1987). In that case, the Court of Appeals for the Third Circuit considered legal malpractice liability exclusions that were substantially similar to those at issue in this case.[6] Pepicelli, a lawyer, represented tire manufacturer Perma Tread. Pepicelli also owned a business that had entered into an agreement to purchase a manufacturing plant from Perma Tread. The plant burned down after the purchase agreement with Pepicelli's business was signed, but before closing. Pepicelli and his law firm represented Perma Tread in its efforts to secure coverage from its fire insurer for damages to the plant sustained during the fire. When these efforts failed, Perma Tread sued Pepicelli and his law firm for legal malpractice. Pepicelli then sought coverage in that suit under a professional liability policy Pepicelli held with Niagara Fire Insurance Company. Niagara filed a declaratory judgment suit on Pepicelli's claim for coverage under his policy. The court concluded that two exclusions cited by Niagara did not apply to Pepicelli and that Pepicelli was therefore entitled to coverage under the policy.

The Court of Appeals for the Third Circuit considered three major factors in addressing the two exclusions in *Pepicelli*. First, the court sought to determine whether the actions or interests of the insured attorney in his business enterprise were at issue in the underlying litigation and whether the resolution of the underlying claims would affect those interests. *See Pepicelli*, 821 F.2d at 220. While the court in *Pepicelli* concluded that the attorney's business interests were not at issue in the underlying suits, I cannot so conclude today. The present case involves three different underlying suits in which LaRocca's business interests in New Gretna are at issue; the suits include claims of negligence against LaRocca in his role as both a trustee and partner of New Gretna. In addition, the suits against LaRocca would undoubtedly affect his interest in his business, New Gretna, as both LaRocca and his business are defendants and adversaries in those suits and both face liability for the losses of the plaintiffs and third-party plaintiffs in those cases. Thus, I conclude that the insured attorney's (LaRocca's) interests in his business (New Gretna) are indeed at issue in the underlying litigation.

### A. Officer, Director or Partner Exclusion

■ Turning to the individual exclusions, the court in *Pepicelli* considered an

---

**5.** It is undisputed that LaRocca was a trustee of the New Gretna Trust, and a partner with a 7.5% interest in the New Gretna Realty, L.L.C. (Motion of Defendant F. Craig LaRocca for Summary Judgment, Exhibit A; Exhibit B, at 24).

**6.** The first exclusion in *Pepicelli* applied to "any claim arising out of any insured's activities as an officer or director of any employee trust, charitable organization, corporation, company or business other than that to the named insured." *Pepicelli*, 821 F.2d at 221. Compare to the language of Exclusion E in the instant case: "any claim arising out of an INSURED'S activities as an officer, director, [or] partner, ... of any company, corporation, operation, organization or association other than the NAMED INSURED." (Coregis Policy, at 3).

The second exclusion in *Pepicelli* excluded "any claim made by or against or in connection with any business enterprise not named in the Declarations ... which is directly or indirectly controlled, operated or managed by any insured in a non-fiduciary capacity." 821 F.2d at 221. Compare with Exclusion G in the Coregis policy: "any CLAIM arising out of or in connection with the conduct of any business enterprise other than the NAMED INSURED (including the ownership, maintenance or care of any property in connection therewith) which is owned by an INSURED or in which any INSURED is a partner, or which is directly or indirectly controlled, operated or managed by any INSURED either individually or in a fiduciary capacity." (Coregis Policy, at 3).

exclusion that, like Exclusion E in the present case, exempted from coverage claims that arise out of the insured lawyer's activities as an officer or director of a corporation or business. The court held that the exclusion applied to situations in which an individual acted solely as a business person or simultaneously as business person and lawyer, and concluded that the exclusion did not apply to the attorney's claim. *See Pepicelli,* 821 F.2d at 220–21.

A reasonable trier of fact applying this analysis could not reach the same conclusion in the instant case. The underlying malpractice claims against LaRocca, while of course critical of his legal representation of New Gretna, are not "based solely on [LaRocca's] . . . legal representation" of New Gretna; rather, they also are closely intertwined with his role in New Gretna as both a partner and trustee. *See id.* at 221. The allegations refer to a period of time during which LaRocca was both an attorney and partner of New Gretna.[7] The plaintiffs and third-party plaintiffs in the underlying claims allege that during that time, LaRocca knew or should have known about Paggi's conduct, and failed to adequately supervise transactions related to Drewes Landing. (*See, e.g.,* Coregis Motion, Exhibit G to Exhibit 1, Answer and Counterclaim of Fidelity National Title Ins. Co., at 31). The allegations involve overlap between LaRocca's role as legal counsel and partner/trustee to New Gretna, because his knowledge of Paggi's conduct and supervision of transactions could have arisen from or related to both roles. Thus, the underlying legal malpractice claims "simultaneously involve[d] business

decisions by [LaRocca]," which is the precise scenario under which the Court of Appeals for the Third Circuit suggested that such an exclusion would apply. *See Pepicelli,* 821 F.2d at 221. I therefore conclude that Exclusion E applies to LaRocca, and that he is not eligible for benefits under the Coregis professional liability policy. *See Coregis Ins. Co. v. Bartos,* 37 F.Supp.2d 391, 394–95 (E.D.Pa.1999).

## B. Business Enterprise Exclusion

■ Finally, the court in *Pepicelli* also considered the applicability of a "business enterprise" exception similar to Exclusion G in LaRocca's policy. The court held that because "the malpractice claims [were] not 'made by or against'" the insured attorney's business enterprise and were not made "in connection with" the business enterprise, the exclusion did not apply. *See Pepicelli,* 821 F.2d at 221.

Here, faced with a similar exclusion but very different facts, I conclude that the language of Exclusion G applies to the suits against LaRocca. It is axiomatic that a suit against a lawyer for services he provided to a business enterprise in which he was a partner is a suit that "arises out of" and is "in connection with" that business enterprise, which is the precise scenario that presents itself in this case. Furthermore, the malpractice claims in the underlying litigation here were both "made by" and "against" the insured attorney's business, New Gretna. *See id.*[8] I conclude that the suits arise out of and are

---

7. LaRocca argues that his liability is based solely on a single letter in which he, acting as legal counsel, assented to the encumbering of 20 lots in Drewes Landing. I do not agree that his liability rests on such a narrow factual foundation. *See infra* text, "LaRocca's Arguments."

8. One of the underlying claims for which LaRocca seeks coverage is the counterclaim of his own business (New Gretna) against him, and the other two are claims and counterclaims by third parties alleging malpractice

against LaRocca for the services he provided to New Gretna. Claimants in the underlying suits who were not clients of LaRocca apparently are proceeding under the malpractice liability theory set forth in *Petrillo v. Bachenberg,* 139 N.J. 472, 655 A.2d 1354, 1359–60 (1985) ("attorneys may owe a duty of care to non-clients when the attorneys know, or should know, that non-clients will rely on the attorney's representations and that the non-clients are not too remote from the attorneys to be entitled to protection").

connected with LaRocca's interest in his business.[9]

Therefore, I find that the broad wording of Exclusion G encompasses the underlying malpractice suits against LaRocca and thus renders him ineligible for coverage under the Coregis policy.[10]

## C. LaRocca's Arguments

LaRocca makes a three-pronged argument in support of coverage.

First, he asserts that his liability in all three underlying suits rests solely on a letter he wrote on February 8, 1995, authorizing the encumbering of 20 lots in the Drewes Landing development. The assertion is without merit; neither the complaints in the underlying actions nor the record before me suggest that liability rests on such a limited sphere of conduct. The complaints allege in general fashion that LaRocca "knew or should have known" of the financial misconduct by Paggi that gave rise to the underlying suits and that he "failed to exercise ade-

quate supervision" over legal instruments used in the sale and encumbrance of properties in the Drewes Landing development. (*See, e.g.,* Coregis Motion, Exhibit G to Exhibit 1, Answer and Counterclaim of Fidelity National Title Ins. Co., at 31). LaRocca provides neither evidence nor persuasive argument as to why the Court should assume that these broadly worded allegations rest on the paper-thin foundation of a single letter.

By narrowing the factual basis of his liability, LaRocca seeks to bolster the second prong of his argument, which can be summarized in this way: because, in the precise moment he wrote the letter, LaRocca was acting solely as legal counsel, the claims against him do not fall within the ambit of Exclusions E and G.[11] His argument attempts to narrow the scope of the relevant conduct under Exclusions E and G down to a single factual episode, and to persuade the Court that because LaRocca may have been wearing his lawyer "hat" at the precise moment he was writ-

**9.** The court in *Pepicelli* also identified the purpose of the business enterprise exclusion: "to prevent collusive suits whereby malpractice coverage could be used to shift a lawyer's business loss onto his or her malpractice carrier." 821 F.2d at 221. The court concluded that the attorney had no collusive purpose in seeking coverage, and that the connection between the suit and the attorney's business was too tenuous. *See id.* In the present case, despite LaRocca's protestations to the contrary, it is possible that the collusive purpose discussed in *Pepicelli* could come into play, and that by securing the professional liability coverage under the Coregis policy, LaRocca could offset the liabilities he might incur as a trustee and partner of New Gretna. For instance, LaRocca argues that if this Court were to hold that coverage would apply to the legal malpractice claims against him, Coregis would be obliged to defend him against the non-legal malpractice claims as well. I do not draw any conclusion on that question today; I merely use the argument to point out one possible way in which securing professional liability policy could accomplish the collusive purpose of shifting LaRocca's business liabilities onto his legal malpractice insurance carrier.

**10.** My conclusion as to the applicability of Exclusion G is further supported by the decision of the Court of Appeals for the First Circuit in *Mt. Airy Ins. Co. v. Greenbaum,* 127 F.3d 15 (1st Cir.1997). In that case, the court considered the application of a nearly identically worded exclusion to strikingly similar underlying malpractice suits against a lawyer and law firm that provided legal services for a real estate development partnership in which the lawyer also was a partner. The court held that the exclusion applied to "all claims sounding in malpractice if the allegations charge wrongdoing in connection with a business in which the insured ... played a role as an officer, shareholder, director, trustee or partner ..." *Id.* at 20. The court concluded that the exclusion clearly applied, and that the lawyer's insurance company had no duty to defend the individual lawyer or the law firm. Upon consideration of the very similar facts of this case, I come to the same conclusion.

**11.** LaRocca claims that he "was not acting as a principal of New Gretna" during the conduct alleged in the underlying complaints. (Brief in Support of Motion for Summary Judgment on Behalf of Defendant/Counterclaimant, F. Craig LaRocca, at 15).

ing the letter at issue, Exclusions E and G do not apply.[12]

I read the plain language of the exclusions to apply much more broadly than LaRocca suggests to encompass "any CLAIM arising out of" or "in connection with" an insured attorney's business roles and activities, including claims that reside in the twilight between business and legal affairs. (Coregis Policy, at 3).[13] The underlying legal malpractice claims, as discussed above, focus on events that took place during a time when LaRocca wore two hats; one as legal counsel to New Gretna, and another as trustee and part owner of New Gretna. Distinguishing with certainty between the roles LaRocca was playing at different moments in his dealings with New Gretna and Drewes Landing could prove impossible. The broad, inclusive language of the exclusions, however, makes the drawing of such distinctions unnecessary. The exclusions apply to any claims that "arise out of" situations in which the insured was both a lawyer to a business and an officer in that same business, and because LaRocca played both roles in New Gretna and the malpractice claims arise out of those roles, the exclusions apply to the suits against him. *See Bartos*, 37 F.Supp.2d at 394–95.

Finally, LaRocca argues that he had "no ownership interest or control" over two of the plaintiffs in the underlying suits (Carnegie Bank and Fidelity National Title Ins. Co.), and therefore the policy exclusions do not apply to their claims. His argument implies that exclusions such as E and G operate only where the insured attorney is sued by his own business or an organization in which he or she had an ownership interest in or control over. This misconstrues the language of the policy exclusions and the holding of the court of appeals in *Pepicelli*. There is no suggestion in *Pepicelli* that the exclusions applied only when an insured attorney's business sued the attorney in the underlying suit. The basis for LaRocca's argument appears to be the court's suggestion in *Pepicelli* that the exclusions did not apply because "the malpractice claims [were] not 'made by or against' " the insured attorney's business enterprise. *See Pepicelli*, 821 F.2d at 221. However, the very opposite is true in this case; in each underlying suit, the malpractice claims have been made "against" New Gretna, and in one case, the malpractice claims have been made "by" New Gretna. Thus, this argument fails as well.[14]

I conclude that Exclusions E and G apply to the underlying claims against La-

12. LaRocca makes an even broader argument in his response, where he essentially argues that because the claims are "couched in terms of legal malpractice," this Court should hold that Exclusions E and G do not apply. This argument reads the exclusion out of the policy. The policy (and, therefore, the exclusions) apply only to legal malpractice claims. If, as he argues, the exclusions do not operate whenever the underlying claims charge legal malpractice, then the exclusions would never operate at all, because they are only relevant when the underlying claims are legal malpractice claims. The only conceivable claim to which the exclusions would apply under LaRocca's theory would be a legal malpractice claim based solely on an attorney's acts as the principal of a business; a claim that would not survive judicial scrutiny. No lawyer worth his salt would bring a legal malpractice claim based solely on an attorney's conduct as a business owner or director; a

lawyer who did could end up defending a legal malpractice suit of his own.

13. In *Pepicelli*, the Court of Appeals for the Third Circuit observed that a similarly worded exclusion applies to situations where a attorney acts simultaneously as a legal representative and a business officer or director. *See Pepicelli*, 821 F.2d at 220–21.

14. LaRocca may also base his argument on the court's statement in *Pepicelli* that the exclusions did not apply because the insured attorney's business was merely "a player in the factual background" of the underlying suits. 821 F.2d at 221. However, in the present case, the insured attorney's business, New Gretna, is indeed a central player in the underlying suits, and the underlying legal malpractice claims undoubtedly "arise out of" the LaRocca's interest in New Gretna. *See Greenbaum*, 127 F.3d at 20.

Rocca in the three above-mentioned suits in the Superior Court of New Jersey and find that Coregis is under no obligation to provide coverage to LaRocca in those suits. I will therefore grant the motion of Coregis for summary judgment on Counts I and II of its First Amended Complaint for Declaratory Judgment.

LaRocca has moved for summary judgment on his counterclaim for coverage under his insurance policy and for counsel fees. Having concluded as a matter of law that LaRocca's claim falls within the plain language of Exclusions E and G, and that he is therefore not eligible for coverage, I will deny LaRocca's motion for summary judgment on his counterclaim for coverage and attorneys' fees.

LaRocca also moves for summary judgment on his counterclaim of breach of contract. Because I have determined that LaRocca's claim falls within the insurance contract's exclusionary language, I conclude that a denial of benefits under the policy does not breach the insurance contract between LaRocca and Coregis. LaRocca's motion for summary judgment will therefore be denied as to his breach of contract claim.

LaRocca seeks summary judgment on his counterclaim for bad faith, as well. To prove a claim of bad faith on the part of an insurance company, the insured must demonstrate with the support of clear and convincing evidence (1) that the insurer lacked a reasonable basis for denying benefits and (2) that the insurer knew of or recklessly disregarded its lack of reasonable basis. *See Klinger v. State Farm Mutual Automobile Ins. Co.*, 115 F.3d 230, 233 (3d Cir.1997). LaRocca's claim fails both prongs. Because I have concluded that Coregis' interpretation of the relevant exclusions and its consequent denial of benefits was correct under the policy, it follows that Coregis had a reasonable basis

for denying coverage. LaRocca's motion for summary judgment on his counterclaim of bad faith against Coregis therefore cannot prevail as a matter of law.[15]

## III. CONCLUSION

Having determined that the exclusions in LaRocca's professional responsibility insurance policy apply to the legal malpractice claims made against him in the underlying suits in the Superior Court of New Jersey, I will grant the motion of Coregis for summary judgment and deny the motion of LaRocca for summary judgment.

An appropriate Order follows.

## *ORDER*

**AND NOW,** this 7th day of December, 1999, upon consideration of the cross-motions of plaintiff Coregis Insurance Company (Document No. 18) and defendant F. Craig LaRocca (Document No. 19) for summary judgment and the memoranda in support thereof and responses thereto, having thoroughly reviewed the pleadings and evidence pursuant to Rule 56 of the Federal Rules of Civil Procedure, and for the reasons set forth in the foregoing memorandum, it is hereby **ORDERED** that the motion of Coregis Insurance Company is **GRANTED** as to Counts I and II of the complaint, and the motion of LaRocca is **DENIED** as to all counts of the counterclaim.

**IT IS HEREBY DECLARED,** pursuant to 28 U.S.C. § 2201, that Coregis does not provide coverage under Policy Number PL–319334–4 and has no duty to defend LaRocca, due to the operation of Exclusions E and G, in the following actions filed against LaRocca in the Superior Court of New Jersey: *Carnegie Bank, N.A. v. Page Group, Inc.*, No. 5036–96 (Sup.Ct. N.J. Ocean Cty.1996); *Serot v. Page Group*, No. 1153–96 (Sup.Ct. N.J.

---

**15.** LaRocca also seeks coverage under the Coregis policy held by his former employer, Pearlstine/Salkin Associates. However, that policy includes the same exclusions contained in LaRocca's individual policy, and his claim for coverage under Pearlstine/Salkin's policy would fail for the reasons described herein.

Ocean Cty.1996); *Pesce v. Page Group, Inc.,* No. 03252–96 (Sup.Ct. N.J. Burlington Cty.1996).

This is a Final Order.