■ Law Offices of Zachary R. Greenhill P.C. et al., Appellants, v Liberty Insurance Underwriters, Inc., et al., Respondents. [9 NYS3d 264]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered on or about October 8, 2014, which denied plaintiffs' motion for summary judgment as premature, unanimously affirmed, without costs.

Plaintiffs, an attorney and his law firm, seek a declaration that defendants, which issued a lawyers professional liability insurance policy, were required to provide a defense and pay for all defense costs with respect to counterclaims asserted against Zachary Greenhill (Mr. Greenhill) in an underlying contract action (*Greenhill v The Dwight School*, Sup Ct, NY County, index No. 603653/2009 [the underlying contract action]). Before plaintiffs commenced this action, the underlying contract action settled and the counterclaims were dismissed. Accordingly, in this action, plaintiffs seek to recover defense costs incurred in connection with those counterclaims against them in the underlying action. Plaintiffs assert that they are

entitled to such costs because defendants (the insurer) breached their duty to defend and the counterclaims do not fall within any policy exclusion.

Defendants contend that plaintiffs failed to establish any breach of the duty to defend, that plaintiffs' motion is premature, and that they need discovery to determine whether the counterclaims fall within certain policy exclusions which apply to situations where an attorney is sued for legal malpractice, but the attorney has also engaged in certain outside business activities. We agree with defendants.

Mr. Greenhill, his wife, Judy Lee Greenhill (together the Greenhills), and Stephen H. Spahn are founding members of the Dwight School in China, LLC (Dwight China). Mr. Greenhill is an attorney, but his wife is not. It was anticipated that the Dwight School would partner with a top-tier high school in China to establish a Chinese-American joint high school curriculum and dual diploma program and that Dwight China would be the business entity through which this would be accomplished. Although an operating agreement for Dwight China identifies Spahn as the chairman of the board and Mr. Greenhill as its president and chief executive operating officer, and identifies the Greenhills as having a collective 49% interest (24.5% each) in the company, the operating agreement was never executed by any of the parties to the agreement.

In the underlying contract action, the Greenhills sought to enforce a partially executed consulting agreement they claimed to have with Dwight China. Pursuant to that agreement, they were to receive semiannual consulting fees for the following services: "business development, sales and marketing appropriate to [Dwight China's] business, legal services, contracting for legal services and government filings, contract negotiations, college and university guidance services and close and overall execution of the Company's business plan." The consulting agreement was executed by Spahn on behalf of Dwight China and the Dwight School (Dwight entities), but neither of the Greenhills ever signed it.

In their answer to the second amended complaint in the underlying contract action, the Dwight entities and Spahn denied the enforceability of the consulting contract and alleged that Mr. Greenhill had enlisted the aid of outside counsel to structure the operating agreement in such a way that it personally benefitted the Greenhills' interests. In addition to asserting a counterclaim against the Greenhills for repudiation of the consulting agreement, the Dwight entities and Spahn asserted a counterclaim against Mr. Greenhill for legal malprac-

tice, alleging that "[Zachary] Greenhill had an attorney-client relationship" with them and that he breached his fiduciary duties to the Dwight entities by having them sign the consulting agreement "without fully informing [them] of his view of the possible consequences of such a signature absent the Greenhills' signature, or advising them to seek independent counsel regarding the alleged Consulting Agreement." The Dwight entities claimed further that Mr. Greenhill had engaged in self-dealing by using the consulting agreement as evidence of the operating agreement that had never been signed.

In a third counterclaim against Mr. Greenhill's law firm, the Dwight entities sought to recoup the "legal and consulting fees" they had paid, because Mr. Greenhill allegedly had given them the impression that he was their attorney, but actually defrauded them.

Initially, defendants denied coverage for the counterclaims based upon the following exclusions:

"3. *Certain Services and Capacities.*

"This policy does not apply to any claim arising out of your services and/or capacity as:

"a. an officer, director, partner, trustee, manager operator, or employee of an organization other than that of the name insured . . . [the Capacity Exclusion]. . . .

"6. *Equity Interests.* If a person insured under this policy owns, along with his or her spouse, ten percent (10%) or more of the issued and outstanding shares, units or other portions of the capital of an organization, and that person simultaneously provides professional legal services with respect to such an organization, this policy will provide no coverage to that person for any claims that result therefrom.

"If the collective equity interest of:

"a. all persons and entities insured under this policy;

"b. spouses of persons insured under this policy; and

"c. the named insured

"is thirty-five percent (35%) or more of the issued and outstanding shares, units or other portions of the capital of an organization, and any person simultaneously provides professional legal services with respect to such an organization, this policy will provide no coverage to any person insured or to the named insured for any claims that result therefrom" (boldface omitted [the Equity Interests Exclusion]).

In subsequent correspondence dated January 4, 2013, however, defendants notified plaintiffs that they had reconsid-

ered their position and agreed to defend plaintiffs, but with a full reservation of rights. Defendants stated that they intended to further investigate Mr. Greenhill's status as a Dwight China executive to determine whether "he was wearing two hats—one as a solo practitioner and the other as negotiator and executive for Dwight China."

We reject plaintiffs' argument that defendants repudiated or breached the policy by agreeing to defend them subject to a full reservation of rights. We also agree with Supreme Court that plaintiffs' motion for summary judgment is premature, because no discovery has been conducted as to whether the allegations in the counterclaims fall within either or both exclusions to coverage.

The malpractice counterclaim against Mr. Greenhill is of a hybrid nature and arises in the context of a case commenced by the Greenhills to enforce the payment of consulting fees for their services as a college guidance team. Although Mr. Greenhill is a practicing attorney and the Dwight entities acknowledge they paid him for his legal services, he sought to enforce a consulting agreement for services closely related to an operating agreement that identified him and his wife as having an ownership interest. Many of the other services in the consulting agreement are of a nonlegal nature and directly correlate to the Chinese-American educational program that was envisioned. This is precisely the situation that the Capacity Exclusion and Equity Interests Exclusion seem to encompass and presents circumstances very similar to those decided by the Court of Appeals in *K2 Inv. Group, LLC v American Guar. & Liab. Ins. Co.* (22 NY3d 578 [2014] [*K2*]), and more recently by this court in the case of *Lee & Amtzis, LLP v American Guar. & Liab. Ins. Co.* (128 AD3d 104 [1st Dept 2015] [*Lee & Amtzis*]).

It is well-settled law that a insurer's duty to defend its insured is determined by analyzing the allegations of the subject pleading and the terms of the policy (*see Servidone Constr. Corp. v Security Ins. Co. of Hartford*, 64 NY2d 419, 424 [1985]). Defendants, despite their initial refusal, agreed to provide plaintiffs with a defense, but plaintiffs rejected their tender because of the reservation of rights. Although plaintiffs liken the reservation of rights to an outright refusal to defend them and, therefore, a repudiation or breach of the policy, that is an inaccurate statement of law. The issuance of a reservation of rights allows the insurer the flexibility of fulfilling its obligation to provide its insured with a defense, while continuing to investigate the claim further. In fact, an insurance

company's failure to reserve the right to disclaim coverage may later result in the insurer being equitably estopped from doing so (*Federated Dept. Stores, Inc. v Twin City Fire Ins. Co.*, 28 AD3d 32, 36 [1st Dept 2006]). Thus, although plaintiffs are correct that the counterclaims, broadly construed, triggered defendants' duty to provide them with a defense, defendants did not breach that duty by agreeing to do so, but with a reservation of rights to, among other things, later recoup their defense costs upon a determination of non-coverage (*see BX Third Ave. Partners, LLC v Fidelity Natl. Tit. Ins. Co.*, 112 AD3d 430, 431 [1st Dept 2013]).

Mr. Greenhill, much like the attorneys in *K2* and *Lee & Amtzis*, obtained a lawyer's professional liability policy that specifically excludes coverage in where the attorney is serving two masters: his client and himself. Plaintiffs seek to distinguish *K2* solely on the basis that it involved the issue of whether the insurer had to indemnify its insured as opposed to providing a defense. If, however, coverage is excluded because of the hybrid nature of the legal representation, defense costs are also excluded (*see Lee & Amtzis*, 2015 NY Slip Op 02919, *3). While the counterclaims are, in part, rooted in the legal services Mr. Greenhill provided, allegedly failed to provide, failed to provide, overall the counterclaims consist of intertwined allegations about Mr. Greenhill's legal services to The Dwight School and Dwight China, the latter of which he appears to have had a financial interest in. Therefore, defendants have raised issues of fact whether Mr. Greenhill's activities on behalf of the Dwight entities were of a hybrid nature, because of the allegations of self-dealing, the Greenhills' alleged 49% ownership interest in Dwight China, and the Greenhills' efforts in enforcing the consulting agreement, which personally benefitted them financially. At a minimum, discovery is necessary on the issue of Mr. Greenhill's ownership interests and whether such interests come within the Equity Interests Exclusion.

Because plaintiffs have not established as a matter of law that defendants breached the policy or that the counterclaims do not fall within the policy exclusions and defendants seek discovery, the issue of whether plaintiffs are entitled to recover their defense costs from defendants is premature.

We have considered plaintiffs' remaining contentions and find them unavailing. Concur—Acosta, J.P., Saxe, Richter and Gische, JJ.