Filed 2/9/21  Carson v. Truck Insurance Exchange CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MIKE CARSON et al., | C081767 |
| Plaintiffs, Cross-defendants and Appellants, | (Super. Ct. No. 34-2013-00138428) |
| v. | |
| TRUCK INSURANCE EXCHANGE, | |
| Defendant, Cross-complainant and Respondent. | |

Plaintiffs Jack Sweigart, Mike Carson, and Bob Payne (collectively the SCP parties) appeal the judgment entered following the trial court's grant of defendant Truck Insurance Exchange's (Truck) motion for summary judgment.  In the underlying litigation, the SCP parties were named in a suit brought by the Ranch at Clay Station Homeowner's Association (the HOA) and individual homeowners.  Truck insured the HOA.  The SCP parties sought coverage under the policy, which Truck denied.  Litigation followed and the parties filed cross-motions for summary judgment.  The trial

1

court granted Truck's motion, finding the SCP parties excluded from coverage by the policy's terms. The SCP parties challenge the trial court's reasoning. We shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

**The Underlying Litigation**

Developer JTS Communities, Inc. (JTS) built a condominium development, the Ranch at Clay Station. The Ranch at Clay Station consisted of 1,200 acres with 222 homes and 400 acres designated as a "common area." The homeowners believed the common area would be conveyed to the HOA for communal use, including horseback riding, hiking, and biking. After the completion of construction, JTS declared it retained title to the 400-acre common area and intended to sell it to a third party for $2 million.

In response, the HOA and individual homeowners brought suit against JTS over the common area, in *Montgomery v. JTS Communities, Inc.* (*Montgomery*).[1] In the second amended complaint, filed in July 2011, the plaintiffs added claims against Sweigart, Payne, and Carson.

Sweigart served as president of the HOA in 2004. He has been president of JTS from 1999 to the present. Payne was on the HOA's board of directors from 2005 through August 2007 and was also an officer. From December 2003 through September 2008, Payne worked for JTS in the warranty department. Carson served on the initial HOA board of directors and also served as its president. Carson served on the board between 2005 and 2009. He was initially appointed by JTS and later elected by the homeowners. Carson also performed land development work for JTS from 1999 to the present.

---

[1] *Montgomery v. JTS Communities, Inc.*, Sacramento County Superior Court, case No. 34-2010-00073633.

The second amended complaint identifies the parties and sets forth their involvement. With respect to Sweigart, it alleges: "Jack T. Sweigart . . . was and is an individual doing business in the County . . . Sweigart and Does 76 through 100 were and are the owners of JTS and owned, planned, subdivided, developed, constructed, marketed, maintained, and sold the residences, the homes at The Ranch [at Clay Station]. Further, Plaintiffs believe and contend that Sweigart directed his agents, employees, and representatives to mislead the . . . HOA and the Homeowners regarding the use and ownership of the Common Area, among other things."

As to Carson and Payne, the second amended complaint states: "Defendants Mike Carson and Bob Payne (hereinafter 'Board Members' and collectively included in 'Defendants') were and are individuals doing business in the County . . . Plaintiffs believe and contend, and based thereon allege, Board Members and Does 126-150 were and are representatives of JTS who served on the . . . HOA board of directors under the control and direction of JTS."

The second amended complaint alleges a single cause of action against Sweigart, Carson, Payne, and JTS for breach of fiduciary duty: "48. Payne, Carson, Sweigart, and JTS and its agents and representatives (hereinafter 'JTS Defendants') as directors of the . . . HOA, owed a fiduciary duty to Plaintiffs not to exercise their powers to gain pecuniary benefit for themselves by causing Plaintiffs harm in violation of California Corporations Code §§ 7210, 7231 and related statutes.

"49. As stated above, JTS Defendants were in control of the . . . HOA from approximately 2003 through 2008. Attached hereto as Exhibit F is a matrix detailing the chronology of the JTS controlled board of the . . . HOA.

"50. Plaintiffs believe and understand, and based thereon allege, that JTS Defendants, and each of them as directors of the . . . HOA, breached that duty by:

"(A) Failing to properly investigate the annexation of the Common Area;

3

"(B) Refusing to accept the annexation of the Common Area when offered by JTS;

"(C) Inappropriately contracting for maintenance service with entities which directly and indirectly benefited JTS;

"(D) Improperly withholding financial information and documents from . . . HOA;

"(E) Allowing property taxes to accrue on the Common Area in excess of $150,000; and

"(F) Other breaches of fiduciary duty which will be discovered as investigation continues.

"Plaintiffs are informed and believe and on that basis allege that JTS, and its agents and representatives, and each of them, took the action described in this paragraph for their own pecuniary benefit. Defendants, and each of them, suffered no harm as a result of the action but knew it would cause harm to Plaintiffs.

"51. Plaintiffs believe and allege that as a direct and proximate result of the breach of fiduciary duty above, Plaintiffs have been harmed as more fully set forth in prayer and of this complaint in an amount to be proven at trial."

In February 2012 the SCP parties filed a first amended cross-complaint for indemnity and declaratory relief against the *Montgomery* plaintiffs. The SCP parties alleged the HOA owed a duty to defend and indemnify them in *Montgomery* based on their service as directors of the HOA.

While *Montgomery* was pending, the SCP parties tendered their defense to Truck. They argued the underlying action triggered Truck's duty to defend them as directors and officers under the HOA's primary policy and umbrella policy. Truck denied coverage.

In August 2014 the parties to *Montgomery* entered into a settlement agreement. As part of the settlement, the HOA received a nonrevocable exclusive easement to all but five of the 400 acres in dispute. The agreement also contained a provision requiring the

4

HOA's board of directors to pass a resolution indemnifying the SCP parties for all attorney fees and cost incurred in the underlying action. Subsequently, the HOA adopted the resolution.

As part of the agreement, the *Montgomery* plaintiffs agreed to dismiss the action. The SCP parties reserved the right to pursue their cross-complaint for indemnity against the HOA. Subsequently, the *Montgomery* action was dismissed with prejudice.

Truck was unaware of the settlement or the board resolution until after the settlement was adopted by the HOA.

**The Truck Policy**

The HOA had purchased a condominium owner's policy from Truck. The policy contained commercial general liability coverage and a directors and officers endorsement.

The directors and officers liability coverage states, in part: "We will pay those sums which you become legally obligated to pay as damages because of a 'Claim' for any 'wrongful acts' committed by any insured, or any other person for whose acts you are legally liable. The 'wrongful acts' of an insured natural person must be committed in their conduct of management responsibilities for the organization. We will have the right and duty to defend you against any 'suit' seeking those damages. However, we will have no duty to defend you against any 'suit' seeking damages for 'wrongful acts' to which this insurance does not apply."

The policy was effective November 5, 2010, and included a retroactive date of November 5, 2007, which applied to the directors and officers endorsement.[2]

---

[2] The dissent points out that Sweigart and Payne were no longer members of the board on November 5, 2007, the retroactive date, and thus were not covered by the policy. Perhaps so, although plaintiffs disagree and the trial court chose to base its holding on the policy exclusion exclusively, as do we.

5

The "Ranch at Clay Station HOA" is the named insured.  The insured also includes "Any person who has been, now is, or shall become:  [¶]  a. A duly elected director or trustee of an insured organization;  [¶]  b. Duly elected or appointed officer of an insured organization . . . ."

The policy defines a claim as "a demand or 'suit' against any insured for a 'wrongful act.' "  A wrongful act "means any negligent acts, errors, omissions or breach of duty committed by an insured in their capacity as such."

**Exclusions**

The policy also sets forth exclusions.  The exclusion at issue here states:

"EXCLUSIONS:

"This insurance does not apply to 'Claims':  [¶] . . . [¶]

"12.  Relating to or arising from the insured serving in any capacity in any organization, which at the time of such services is not an insured under this policy;

"13.  Brought or maintained by or on behalf of an insured organization unless the 'Claim' is brought and maintained totally independent of, and totally without solicitation, assistance, participation or intervention of any officer, director or trustee of an insured organization;

"14.  For liability under or breach of any oral, written or implied contract or agreement, or for liability of others assumed by the insured under any such contract or agreement, but this exclusion will not apply to the extent the insured would have been liable in the absence of such contract or agreement . . . ."

**The Indemnity Cross-complaint**

In November 2014 the trial court heard argument on the SCP parties' indemnity cross-complaint.  The HOA argued the focus of the *Montgomery* action was not the SCP parties' breach of duty as HOA board members, but on claims and misrepresentations unrelated to board member activities.  The trial court disagreed.  The court entered

6

judgment in favor of the SCP parties on their claim for defense and indemnity. The court found: "Carson, Sweigart and Payne were sued as board members and it was alleged that as board members, they had engaged in certain misconduct as board members that included, inter alia, a breach of fiduciary duty. The board resolved unanimously to indemnify them. By alleging each individual was a board member and that as board members, they breached their fiduciary duty to the HOA, the HOA is estopped to deny they were at relevant times directors."

**Dueling Complaints**

In January 2013 Truck filed an action for declaratory relief against the SCP parties and the HOA, seeking a declaration that it had no duty to defend the SCP parties in the *Montgomery* action. Truck referenced Exclusion No. 12 and Exclusion No. 13 of the policy.

A couple of days later, the SCP parties filed a complaint for breach of contract and breach of the covenant of good faith and fair dealing against Truck. The SCP parties alleged Truck breached its duty to defend them in the *Montgomery* action. The two actions were consolidated.

**Dueling Summary Judgment/Adjudication Motions**

In April 2015 both the SCP parties and Truck filed motions for summary judgment/adjudication over insurance coverage. In its motion, Truck argued the acts of the SCP parties fell outside the policy because their acts were not committed in "their 'conduct of management responsibilities *for the [HOA].*' " Nor were their acts within their capacity as the managers of the HOA board of directors. Exclusion No. 12 and Exclusion No. 13 of the policy applied and barred coverage for claims asserted by the SCP parties. In their opposition, the SCP parties argued they were sued for breach of fiduciary duty as HOA board members, not JTS employees, and the "insured capacity" exclusion did not apply.

Following oral argument, the trial court denied the SCP parties' motion for summary adjudication. The court denied Truck's motion for summary judgment, but granted its motion for summary adjudication. The trial court found Truck had no duty to defend or indemnify the SCP parties under the Exclusion No. 13, the "insured-vs.-insured" exclusion. The court's order stated: "Because the court grants summary adjudication of Truck's declaratory relief complaint based on the insured-vs.-insured exclusion, it does not address the parties' other arguments in support of or in opposition to this part of the motion." The SCP parties filed a motion for reconsideration.

After additional briefing, the trial court issued a minute order vacating its prior order granting summary adjudication. The court found Truck did not meet its burden of demonstrating the nonexistence of any triable issue regarding the applicability of Exclusion No. 13. The court granted Truck's motion for summary judgment on the basis of Exclusion No. 12.

Following more supplemental briefing, the trial court affirmed its prior minute order granting summary judgment in favor of Truck on the basis of Exclusion No. 12. Following entry of judgment, the SCP parties filed a timely notice of appeal.

## DISCUSSION

### Standard of Review

A motion for summary judgment must be granted if the submitted papers show there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party initially bears the burden of making a "prima facie showing of the nonexistence of any genuine issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id.* at p. 851.) Once the moving party has met its burden, the burden shifts to the opposing party to

8

show the existence of a triable issue of material fact. (Code Civ. Proc., § 436c, subds. (c), (p)(2).)

We review de novo the record and the determination of the trial court. First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts negating the opponent's claims and justifying a judgment in the moving party's favor. When a summary judgment motion prima facie justifies a judgment, the final step is to determine whether the opposition demonstrates the existence of a triable, material issue of fact. (*Barclay v. Jesse M. Lange Distributor, Inc.* (2005) 129 Cal.App.4th 281, 290.)

The parties agree the interpretation of an insurance policy presents a question of law. (*Waller v. Truck Insurance Exchange, Inc.* (1995) 11 Cal.4th 1, 18.) In interpreting the policy, we determine the mutual intent of the parties at the time the contract was formed. If possible, we consider only the written provisions of the policy. We interpret policy terms using their " 'ordinary and popular sense' " unless they are used in a technical sense or with a special meaning. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821-822.)

Although policy exclusions are construed strictly, courts are not free to ignore an exclusion if it clearly applies. (*Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 322; *California Traditions, Inc. v. Claremont Liability Ins. Co.* (2011) 197 Cal.App.4th 410, 418-419.) The burden rests with the insurer to prove a claim falls within an exclusion. (*Brodkin v. State Farm Fire & Casualty Co.* (1989) 217 Cal.App.3d 210, 216.) An exclusionary clause must be conspicuous, plain, and clear to be enforceable. (*State Farm Mut. Auto. Ins. Co. v. Jacober* (1973) 10 Cal.3d 193, 201-202.)

**Duty to Defend**

The SCP parties argue the *Montgomery* action triggered Truck's duty to defend because there was a "potential" that the SCP parties could be liable for damages as HOA board members. According to the SCP parties, "if there is even the mere potential that they were sued in their capacity as HOA officers or directors, there is a duty to defend." The trial court correctly rejected this argument.

The trial court noted in the *Montgomery* action, the plaintiffs alleged the SCP parties acted as JTS's agents when they engaged in the misconduct at the center of the action. The court summarized the connections between the SCP parties and JTS and the SCP parties' actions on behalf of JTS. The second amended complaint alleged Sweigart owned JTS and directed his employees and agents to mislead the HOA and other plaintiffs. The SCP parties breached their duties as HOA directors by "[i]nappropriately contracting for maintenance services with entities which directly and indirectly benefited JTS." Sweigart also misrepresented JTS's intent to dedicate a common area to the HOA.

The court concluded: "Given these allegations that the SCP Parties' misconduct was related to and motivated by their allegiance with JTS, any reasonable construction of the exclusion in § B(12) and the *Montgomery* Action [second amended complaint] yields a conclusion that the *Montgomery* Action was a claim related to or arising from the SCP Parties' service in an organization which at the time of such service was not an insured. (See *Davis v. Farmers Ins. Group* (2005) 134 Cal.App.4th 100, 106-107 [even in a policy exclusion, the phrase 'arising from' has a broader meaning than the phrase 'caused by'] [citation].)"

The SCP parties also contend the duties they allegedly breached were owed by the HOA to its members and therefore the SCP parties could only be acting in their capacity as HOA board members. According to the SCP parties, the complaint does not focus on any alleged benefit to JTS, but on the potential harm to homeowners.

10

The court also found this contention wanting: "The suggestion appears to be that the allegations must be construed either to establish that the SCP Parties acted in their capacities as officers and directors of the HOA or as agents of JTS. Because there is no apparent basis in either the policies or the law for such a mutual exclusion, the court rejects the suggestion. The fact that the *Montgomery* Plaintiffs alleged the SCP Parties to have engaged in misconduct as HOA officers and directors triggered the coverage provisions in the D&O Endorsements. That the *Montgomery* Plaintiffs also alleged that the SCP Parties acted as agents of JTS triggered the exclusion in § B(12)."

We agree with the trial court's analysis of both the facts and the law. Under Exclusion No. 12, the Truck policy does not apply to claims: "Relating to or arising from the insured serving in *any* capacity in *any* organization which at the time of such service is not an insured under this policy." (Italics added.) In this regard the exclusion is not restricted to claims premised on specific actions taken by an insured on behalf of an organization that is not insured under the policy. Rather, the exclusion applies broadly to claims "relating to" the insured's service "in *any* capacity in *any* organization which at the time of such service is not insured under this policy." Here, while the claimed breach of fiduciary duty may not be based on actions by the three affected directors on behalf of JTS, it is clearly "related to" their service at JTS, an organization that is not insured under the policy. The exclusion anticipates and takes into account complications and conflicts that can arise when individuals serve organizations whose interests might diverge, as occurred in the present case. It is a broad exclusion that encompasses claims relating to the insured's service in any capacity to an organization that is not a named insured.

The dissent insists the allegations of the complaint "establish only that Carson was an employee of JTS and acted in a representative capacity for JTS when he served as a director on the board." (Conc. & dis. opn. *post*, at p. 5.) The alleged breach of fiduciary duty was for his own pecuniary benefit in his capacity as an HOA director, not because he served JTS in a manner separate from his position on the board. If

11

Truck intended to exclude developer-directors from coverage during a period where several, if not a majority, of the board's directors were developer-directors, it had an obligation to do so in a plain, conspicuous, and clear manner.

The allegations cannot be read as the dissent reads them. The complaint does not seek recovery from Carson because he worked for JTS but because he violated his duty of undivided loyalty to the HOA, permitting his service to JTS to take priority. The gravamen of the breach of fiduciary duty claim is that Sweigart, Payne, and Carson acted to benefit JTS to the detriment of the HOA.

Perhaps Carson could have defeated this claim but Truck could choose not to cover claims related to his service to JTS, an uninsured. That is what the exclusion provides and that is what this case is about. Words can sometimes be obfuscated to create ambiguity. But the language of the exclusion, while quite broad, is also quite clear, plain, and conspicuous and covers the circumstances of the present dispute.

**Trial Court's Determination in the *Montgomery* Action**

The SCP parties contend the trial court's findings in the *Montgomery* action bar the trial court in the present case from concluding that Exclusion No. 12 applies. The court in the *Montgomery* action found the SCP parties "were sued as board members and it was alleged that, as board members, they had engaged in certain misconduct as board members that included, inter alia, a breach of fiduciary duty." The *Montgomery* court's rejection of the HOA's argument that the SCP parties were not sued as board members is binding on Truck and the court.

The trial court considered and rejected this argument: "Assuming *arguendo* the *Montgomery* court's determinations binds this court, the court never addressed the question whether the exclusion in § B(12) applies." In addition, the court noted "a determination that the *Montgomery* Plaintiffs' allegations fell within the coverage

12

provisions in the D&O Endorsements does not preclude a determination that an exclusion to coverage applies as well."

We agree with the trial court. The court in *Montgomery* considered JTS and the SCP parties' cross-complaint for indemnity against the HOA stemming from the 2014 settlement agreement. Under the settlement agreement, the HOA passed a board resolution agreeing to indemnify the SCP parties for attorney fees incurred in the *Montgomery* action. The court determined JTS should recover nothing, but awarded the SCP parties $605,860 in attorney fees based on the settlement agreement. The court determined: "Based on all the evidence presented SCP has established a right to indemnity under the terms of the contract." The *Montgomery* court never considered whether or not the SCP parties were an insured under the Truck policy. The court simply enforced a contractual obligation.

## DISPOSITION

The judgment is affirmed. Truck shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/s/
RAYE, P. J.



I concur:


/s/
MURRAY, J.


13

ROBIE, J., Concurring and Dissenting.

I concur in the majority's conclusion that defendant Truck Insurance Exchange (Truck) had no duty to defend plaintiffs Jack Sweigart and Bob Payne in the underlying litigation, but for a different reason. I further dissent to the majority's conclusion that Truck had no duty to defend plaintiff Mike Carson. I believe the policy, with respect to Carson, must be read in favor of coverage and against Truck because exclusion No. 12 is ambiguous and it does not appear that the allegations at issue in this case are of the nature intended to trigger application of this type of exclusion.

## I

*Truck Had No Duty To Defend Sweigart And Payne*

The directors and officers liability coverage form endorsement (the endorsement) to the condominium owners policy issued by Truck (the policy) to named insured The Ranch at Clay Station Homeowners Association (the association) provides: "We will pay those sums which you become legally obligated to pay as damages because of a 'Claim' for any 'wrongful acts' committed by any insured, or any other person for whose acts you are legally liable. The 'wrongful acts' of an insured natural person must be committed in their conduct of management responsibilities for the organization. We will have the right and duty to defend you against any 'suit' seeking those damages. However, we will have no duty to defend you against any 'suit' seeking damages for 'wrongful acts' to which this insurance does not apply." "Wrongful act" is defined as "any negligent acts, errors, omissions or breach of duty committed by an insured in their capacity as such." The amendatory coverage endorsement to the policy defines a claim as either "a civil or administrative adjudicatory proceeding" or "a written demand for monetary damage against the insured for a wrongful act."

It is undisputed Sweigart and Payne met the definition of "insured" under the endorsement as directors on the association's board of directors (the board). It is further

1

undisputed that the policy at issue "does not apply to 'loss' from 'wrongful acts' which took place before the Retroactive Date" of November 5, 2007.

The undisputed facts establish that the wrongful acts complained of as to Sweigart and Payne -- i.e., acts taken while they were on the board -- occurred prior to November 5, 2007, because Sweigart served on the board only in 2004 and Payne served on the board from August 2005 to August 2007. (See *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 298-299 [undisputed extrinsic evidence can establish the absence of a potential for coverage].) Truck, accordingly, had no duty to defend Sweigart and Payne in the underlying litigation relating to their actions while serving on the board.

## II

### *Truck Had A Duty To Defend Carson*

It is undisputed Carson met the definition of "insured" under the endorsement when he served on the board. The question is whether exclusion No. 12 negates that coverage given the allegations in the second amended complaint. In my view, it does not. I believe it is necessary to again review the allegations (somewhat expanded from the majority's recitation) before applying the law.

### A

### *The Allegations And Undisputed Facts*

As to Carson,[3] Truck relies on paragraph 9 and the fifth cause of action in the second amended complaint filed in the *Montgomery*[4] action as the basis for applying

---

[3]     The endorsement contains a "Separation of Insureds" provision, which provides: "Except with respect to the Limits Of Insurance, and any rights or duties specifically assigned in this Coverage Form to the Named Insured, this insurance applies as if each insured were the only insured."

[4]     *Montgomery v. JTS Communities, Inc.*, Sacramento County Superior Court, case No. 34-2010-00073633.

2

exclusion No. 12. In paragraph 9, the *Montgomery* plaintiffs alleged that Carson was believed to be a representative of JTS Communities, Inc. (JTS) "who served on the [board] under the control and direction of JTS." In the breach of fiduciary duty cause of action, the *Montgomery* plaintiffs alleged that, "from approximately 2003 through 2008," JTS was in control of the association, attaching exhibit F, "detailing the chronology of the JTS controlled board of the [association]." In that chronology, for the period August 2007 to August 2008, the *Montgomery* plaintiffs designated two of the directors with a "JTS" behind their names (Carson being one of them) and another with "H.O./JTS" behind her name. The *Montgomery* plaintiffs further asserted, in pertinent part, that Carson owed the association a fiduciary duty and breached that duty by:

"(A) Failing to properly investigate the annexation of the COMMON AREA;

"(B) Refusing to accept the annexation of the COMMON AREA when offered by JTS;

"(C) Inappropriately contracting for maintenance service with entities which directly or indirectly benefited JTS;

"(D) Improperly withholding financial information and documents from [the association];

"(E) Allowing property taxes to accrue on COMMON AREA in excess of $150,000; and

"(F) Other breaches of fiduciary duty which will be discovered as investigation continues."

The *Montgomery* plaintiffs further alleged that Carson took the foregoing actions for his "own pecuniary benefit."

It is undisputed that Carson served on the board from August 2005 until approximately August 2009 and worked for JTS during that time. As noted previously, it is further undisputed that the policy expressly applies retroactively to November 5, 2007.

3

B

*The Exclusion Must Be Read In Favor Of Coverage*

"Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. [Citation.] 'The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties. "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation. [Citation]" [Citations.] A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.' " (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 647-648.) "The proper question is whether the [language] is ambiguous in the context of *this* policy and the circumstances of *this* case." (*Bay Cities Paving & Grading v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 868.) "[A]ny ambiguities in an insurance policy must be read against the insurer." (*Silberg v. Cal. Life Ins. Co.* (1974) 11 Cal.3d 452, 464.)

Insurance coverage is " ' " 'interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] . . . exclusionary clauses are interpreted narrowly against the insurer.' " ' [Citation.] '[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again "any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect." [Citation.] Thus, "the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language."

4

[Citation.] The exclusionary clause "must be *conspicuous, plain and clear*." ' [Citation.] This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded. [Citation.] The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded." (*MacKinnon v. Truck Ins. Exchange*, *supra*, 31 Cal.4th at p. 648.)

Exclusion No. 12 provides the insurance does not apply to claims "[r]elating to or arising from the insured serving in any capacity in any organization which at the time of such service is not an insured under this policy."

Truck asserts the allegations were that Carson breached his fiduciary duties to the association "because [he] engaged in conduct in service of JTS Communities, for JTS Communities' pecuniary benefit, and adverse to the Homeowners' Association." It further asserts the *Montgomery* plaintiffs argued Carson was "acting in the best interests of the developer, JTS Communities, an organization that was <u>not insured under the policy</u> rather than in the best interest of the Homeowners' Association" and it was undisputed Carson was employed by JTS at all times relevant to the underlying litigation. The majority concludes the allegations clearly establish the breach of fiduciary duty related to Carson's "service at JTS." (Maj. opn. at p. 11.) While Truck's and the majority's interpretation of the exclusion is certainly plausible, I believe the exclusion is ambiguous when considered within the context of *this* policy and the circumstances of *this* case.

In my view, the allegations establish only that Carson was an employee of JTS and acted in a representative capacity for JTS when he served as a director on the board. The *Montgomery* plaintiffs expressly alleged that Carson breached his fiduciary duty for *his own* pecuniary benefit and *only* in his capacity *as an association director*, not because he served for and provided services to JTS in a manner separate from his position on the board. If the exclusion is read to negate coverage for decisions made and actions taken by a director serving on the board in a representative capacity on behalf of a developer,

5

would coverage for a developer-director not always be denied and thus be illusory? In my view, the interpretation advanced by Truck does not appear to be contemplated in the context of *this* policy and the circumstances of *this* case.

Truck agreed to the retroactive application of the endorsement to November 5, 2007 -- a time when allegedly at least two and perhaps three developer-directors served on the board. As Carson appropriately points out, a developer's role in the management of a homeowners association is anticipated, known, and regulated. If Truck intended to exclude developer-directors from coverage during a period where several, if not a majority, of the board's directors were developer-directors, it had an obligation to do so in a plain, conspicuous, and clear manner. (*MacKinnon v. Truck Ins. Exchange*, *supra*, 31 Cal.4th at p. 648.) Exclusion No. 12 is not plain or clear as to such an intent, rendering it ambiguous under the facts of *this* case. (See *Zahler v. Twin City Fire Ins. Co.* (S.D.N.Y., Sept. 17, 2007, No. 04 Civ. 10299 (LAP)) 2007 U.S. Dist. Lexis 74720, at *16-17 [finding the phrase "serving as" in an analogous outside services exclusion[5] ambiguous given extrinsic evidence that could support the insured's view of the parties' intent that the exclusion " 'turn[ed] on which "hat" the defendant [wa]s sued in, not whether a "hat" is merely mentioned' "].) I think Carson's interpretation that the exclusion applies to claims relating to or arising from an action taken by Carson in his role as an employee for JTS (independent of merely serving on the board) is a reasonable interpretation in the context and under the facts of *this* case. The ambiguity must be construed against Truck. (*Silberg v. Cal. Life Ins. Co.*, *supra*, 11 Cal.3d at p. 464.)

---

[5] The exclusion provided: "The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Directors and Officers . . . for, based upon, arising from, or in any way related to such Directors or Officers *serving as* a director, officer, trustee, regent, governor or employee of any entity other than the Company even if such service is at the direction or request of the Company . . . ." (*Zahler v. Twin City Fire Ins. Co.*, *supra*, 2007 U.S. Dist. Lexis 74720, at *2-3.)

I further note that the allegations in this case do not appear to be of the nature intended to trigger this type of exclusion. (See, e.g., *Law Offices of Zachary R. Greenhill P.C. v. Liberty Ins. Underwriters, Inc.* (2015) 9 N.Y.S.3d 264, 267 [128 A.D.3d 556, 559] [capacity exclusion[6] applied to malpractice counterclaim arising in the context of the attorney suing to enforce the payment of consulting fees for his and his wife's nonlegal services -- in other words, the allegations were that the attorney was wearing two hats simultaneously and thus he was not insured for misconduct occurring while wearing a nonlegal and uninsured hat]; *Cont'l Cas. Co. v. Adams* (M.D.Pa., Sept. 12, 2003, No. 3: CV-02-1122) 2003 U.S. Dist. Lexis 16434, at \*15-33 & fn. 10 [outside service exclusion[7] applied where underlying litigation alleged misconduct by the individual defendants in their capacities as officers and directors of *both* the insured entity and an uninsured entity]; *Offutt v. Twin City Fire Ins. Co.* (N.D., Sept. 26, 2014, No. 3:13-cv-54) 2014 U.S. Dist. Lexis 188406, at \*20 [dual service exclusion[8] applied

---

[6] The capacity exclusion provided the policy " 'does not apply to any claim arising out of your services and/or capacity as [¶] . . . an officer, director, partner, trustee, manager operator, or employee of an organization other than that of the name insured . . . .' " (*Law Offices of Zachary R. Greenhill P.C. v. Liberty Ins. Underwriters, Inc.*, *supra*, 128 A.D.3d at p. 558.)

[7] The exclusion provided the insurer " 'shall not be liable to pay any loss in connection with any claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged conduct by the individual insureds in the discharge of their duties as directors, officers, trustees, employees or volunteers of any entity other than the entity or charitable organization, even if directed or requested by the entity to serve as directors, officers, employees or volunteers of such entities.' " (*Cont'l Cas. Co. v. Adams*, *supra*, 2003 U.S. Dist. Lexis 16434, at \*22, underlining omitted.)

[8] The dual service exclusion provided: "The Insurer shall not pay Loss . . . of an Insured Person based upon, arising from, or in any way related to such Insured Person's service, at any time, as a director, officer, trustee, regent, governor or equivalent executive or as an employee of any entity other than an Insured Entity." (*Offutt v. Twin City Fire Ins. Co.*, *supra*, 2014 U.S. Dist. Lexis 188406, at \*20.)

7

where allegations against the insured related to his position as chairman of an uninsured entity]; *Palmer v. Twin City Fire Ins. Co.* (E.D.Pa., Nov. 20, 2017, No. 17-826) 2017 U.S. Dist. Lexis 190993, at *14-15 [dual service exclusion[9] applied where claim was based on insured's filing of a petition in his capacity as president and owner of an uninsured entity]; *Coregis Ins. Co. v. Larocca* (E.D.Pa. 1999) 80 F.Supp.2d 452, 456-457 [exclusion[10] barred coverage because the allegations involved the attorney acting simultaneously as an attorney and a partner in a real estate business]; *Coregis Ins. Co. v. Bartos, Broughal & DeVito, LLP* (E.D.Pa. 1999) 37 F.Supp.2d 391, 392-395 [outside business exclusion[11] barred coverage in a legal malpractice suit where allegations were that the attorney simultaneously acted as an attorney and an officer of an investment partnership]; *Westport Ins. Corp. v. Hippo Fleming & Pertile Law Offices* (W.D.Pa. 2018) 349 F.Supp.3d 468, 481-483 [exclusion[12] barred coverage where complaint alleged

---

[9]     The exclusion provided the insurer " 'shall not pay Loss . . . (I) of an Insured Person based upon, arising from, or in any way related to such Insured Person's service, at any time, as a director, officer, trustee, regent, governor, or equivalent executive or as an employee of any entity other than an Insured Entity. . . .' " (*Palmer v. Twin City Fire Ins. Co.*, *supra*, 2017 U.S. Dist. Lexis 190993, at *5.)

[10]     The exclusion barred coverage for "any CLAIM arising out of an INSURED'S activities as an officer, director, partner, manager or employee of any company, corporation, operation, organization or association other than the NAMED INSURED." (*Coregis Ins. Co. v. Larocca*, *supra*, 80 F.Supp.2d at p. 454.)

[11]     Applying the same exclusion as in *Coregis, Ins. Co. v. Larocca*, *supra*, 80 F.Supp.2d at page 454 and others. (*Coregis Ins. Co. v. Bartos, Broughal & Devito, LLP*, *supra*, 37 F.Supp.2d at p. 393.)

[12]     The exclusion provided "[the Policy] shall not apply to any CLAIM based upon, attributable to, or directly or indirectly resulting from . . . any INSURED'S activities as an officer, director, partner, manager, or employee of any company, corporation, operation, organization, partnership, or association other than the NAMED INSURED or PRIOR FIRM, except as a member, director, or officer of any Bar Association, its governing board or any of its committees, or as a member of a formal accreditation,

8

the insured committed legal malpractice and breach of contract by simultaneously acting as an attorney and a real estate developer].)

A law review article describes this type of capacity or outside services exclusion as follows: "Outside capacity exclusions apply where insured directors and officers commit otherwise covered wrongful acts, but do so in a *capacity other than* as a director or officer of the insured corporation, so it has been held that a claim made against a director of the insured corporation, alleging that he committed wrongful acts while acting in his capacity as director of a subsidiary of the insured company, was enough to trigger the exclusion . . . ." (Annotation, Construction and Application of Exclusion Provisions of Directors and Officers Insurance Policy, Exclusive of Regulatory and Insured vs. Insured Exclusions (2008) 34 A.L.R.6th 345, italics added; see also *Ragsdale v. Twin City Fire Ins. Co.* (N.D.Ga., Feb. 2, 2007, No. 1:05-cv-1118-TCB) 2007 U.S. Dist. Lexis 111207, at *12 ["After careful review, it is apparent to the Court that outside capacity exclusions are designed to bar coverage in situations where a lawsuit alleges that individual insureds engaged in conduct as agents of an uninsured entity, rather than the entity to which the [directors' and officers'] policy was issued"]; *Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts & Youngs* (3d Cir. 1987) 821 F.2d 216, 220-221 [holding that an outside business exclusion bars coverage whenever a lawsuit arises from an attorney acting simultaneously as both an attorney and officer or director of an uninsured business, but concluding that the exclusion did not apply to the malpractice claim against the attorney because that claim did not result from the attorney acting in favor of outside business interests].)

---

ethics, peer review, licensing board, standards review, or similar professional board or committee related to the practice of law." (*Westport Ins. Corp. v. Hippo Fleming & Pertile Law Offices*, *supra*, 349 F.Supp.3d at p. 476.)

9

Because I find no merit in the remainder of Truck's arguments and conclude exclusion No. 12 does not bar coverage, I would reverse the judgment in favor of Truck as to its duty to defend Carson.


                             /s/
                             Robie, J.